[Crim. No. 3541.   Second Dist., Div. One.   Feb. 19, 1942.]

THE PEOPLE, Respondent, v. MIKE SHAPIRO, Appellant.

Russell E. Parsons, Joseph L. Fainer and Philip W. Erbsen for Appellant.

Earl Warren, Attorney-General, and R. S. McLaughlin, Deputy Attorney-General, for Respondent.

WHITE, J.—In an information filed by the District Attorney of Los Angeles County, all of the defendants were charged in count 1 with a violation of subdivision 2 of section 337a of the Penal Code; count 2 charged them with the offense denounced by subdivision 4 of the same Penal Code section; while in count 3 the defendants were accused of violating subdivision 1 of the same section. The defendants pleaded not guilty, waived trial by jury, and the cause was submitted to the court upon the transcript of the evidence adduced at the preliminary examination. All defendants were acquitted as to counts 2 and 3, and with the exception of appellant were found not guilty on count 1, the latter being found guilty of the offense charged in said count 1. His motion for a new trial was denied. He appeals from the judgment and the order denying his motion for a new trial.

Generally speaking, subdivision 2 of section 337a of the Penal Code, which forms the basis of count 1 upon which appellant was convicted, makes it unlawful, among other things, for any person to keep, maintain or occupy any room, apartment, etc., equipped with books, papers, devices, appa-

ratus or paraphernalia for the purpose of recording bets or wagers on horse races.

The factual background of this prosecution may be thus summarized: Police officers entered a room located in an apartment house in the city of Los Angeles, where they found appellant seated at a table. On the table was a cash book, with $25.60 in change on top of some betting markers and collection sheets. In the cash book were found similar collection sheets. Several yellow sheets also were found on the table. At the trial it was stipulated that one of the officers was qualified to testify as an expert in connection with the business of bookmaking, and he identified the various sheets as collection sheets and totalized betting markers. Behind the davenport the officers found a file containing several papers, and under the davenport and a chair were found several scratch sheets, while additional scratch sheets were found on the premises. Certain numbers appearing on one of the prosecution's exhibits, when compared with the scratch sheet for July 30, 1941, showed that they referred to various horses racing at Rockingham and Arlington Parks, the amounts of various bets and the information whether the bettors won or lost. Other numbers on People's exhibits above referred to, when compared with scratch sheets for July 26th, showed that such numbers also referred to various race horses running on that date. As the officers were about to enter the apartment, defendant Myra Durschlag opened the door from the inside. She held a purse in her hand, which contained among other things a blue notebook and a sheet of white paper. The officers also found a scratch sheet for August 1, 1941, in a car registered to the last-named defendant parked in front of the premises. On one of the collection sheets appeared the word "Myra." This was written in pencil at the top and showed various collections from and payments to different persons, with a net balance of $25.60, which it is to be noted is the identical amount of money found on the table at which appellant was seated. The officer found similar names on the paper taken from Myra Durschlag's purse and the daily account sheets containing the names of various bettors which were found in the file. Shortly after the entry of the officers into the room defendant Joe Durschlag arrived. Police officers took a yellow collection sheet and two betting markers for August 1, 1941, from his pocket. When compared with the scratch sheet for August 1, 1941, the officer found the numbers

on the markers represented race horses running at Del Mar on that day and the amounts of the various bets.

Leon Jasper, another defendant, arrived about three minutes after defendant Joe Durschlag. In the inside pocket of his coat an officer found three yellow collection sheets and betting markers. When compared with scratch sheets found on the premises for July 26th and 31st, these showed that the numbers on the betting markers referred to race horses running at Arlington, Rockingham and Hollywood Park on those days. They also showed the amount the players had bet and the amount, if any, which they had won. In the wallet of defendant Jasper the officers found a receipt on which appeared the appellant's name and a white sheet of paper with numbers, which the defendant admitted he had written.

It is noteworthy that several of the collection cards had markings thereon resembling those used in bookmaking activities described by the police officer. In the files were also found many loose sheets of paper similar to those used in the keeping of books. At the top of each sheet was a designation, such as "Andy," "Bert," "Ed," and other names and initials. On such sheets were numerous entries of charges, credits and balances, apparently entered with a bookkeeping machine. Several of the names on these account sheets were also found in the daily cash book. Under the head "Revenue" appeared a loose-leaf sheet marked "Winning and Losing," which was opened May 20th with a credit balance of $616.30, which balance fluctuated from day to day, and the last entry, bearing date July 31, 1941, showed a charge of $173.70, a credit of $73.65, and a credit balance of $14,430.36. On another sheet, marked "Wages," was a showing of the payment of $350 per week from May 31st to July 22nd. These payments were shown to have been made to persons identified only by their first or given names, and were in amounts ranging from $30 to $60. The names of the recipients of these wages appeared also opposite various charges, averaging about a dollar per day, on a sheet headed "Gas Expense." The first entry was May 31st and the final entry was July 31st. In other words, there was a more or less complete set of books kept and maintained.

Appellant did not take the witness stand in his own behalf to explain his presence in the room or to deny any of the testimony hereinbefore narrated. In fact, he offered no defense whatsoever.

■ Appellant urges a reversal of the judgment herein on the sole ground that the evidence is insufficient to support the decision of the trial court finding him guilty of violating the provisions of subdivision 2 of section 337a of the Penal Code. In support of this claim it is argued that the evidence fails to establish that appellant either kept or occupied the apartment in question for the purposes denounced by the cited code section. In the adjudication of a charge made in a criminal proceeding, the court is confronted with the question of whether there is present proof of two distinct propositions: first, that the offense charged was committed; and second, that it was perpetrated by the person or persons accused thereof. In the case now before us, no doubt exists as to the first proposition. That a crime was committed is practically conceded by appellant, and indeed is amply established by the evidence. In determining whether appellant committed or participated in the commission of such crime, let us refer to the record for the existence therein of evidence, if any, from which the court could have justifiably drawn the inference of appellant's guilt. Every fact which the court could reasonably have deduced from the evidence must be assumed by us in favor of the court's decision. That the evidence was circumstantial does not impair its intrinsic value, because the law makes no distinction between circumstantial and direct evidence in the degree of proof required for conviction. It merely requires that guilt be established beyond a reasonable doubt by evidence of the one character or the other, or both.

A review of the record herein discloses that when the officers arrived defendant Mrs. Durschlag had just opened the door of the apartment from the inside, preparatory to departing. Appellant was seated at a table in the living room, and in front of him on the table were a cash book and several collection sheets; and in this connection it might be noted that on two of the collection sheets appeared the name "Myra," Mrs. Durschlag's first name, the same being in her handwriting. Also upon the table was $25.60 in cash, which was the exact amount of the net balance shown on one of the cards bearing the name "Myra." Shortly thereafter the two other defendants entered, each having on his person collection sheets not only similar to those marked "Myra," but to others found in the apartment. In the absence of any explanation by the defendant of his presence in the room where the paraphernalia was under the circumstances above set forth, as well as those

presented by the testimony hereinabove narrated, we feel that it was a fair inference for the court to draw that the three defendants came to the apartment to see appellant and deliver collection sheets and money to him, and that the latter was in possession of and occupied the room with bookmaking paraphernalia. The physical facts to which we have referred, coupled with the conduct of the defendant in connection therewith, are in our opinion amply sufficient to support a finding not only that the room was kept for the purpose of accepting wagers on horse races, but that the defendant was occupying the same and at the time of the entry of the officers was receiving and about to receive collection sheets and money from his co-workers. Such a conclusion is justified by reason of the fact that the evidence shows, through the exhibits introduced, that such had been the regular practice, as reflected by similar collection sheets found in the room.

Appellant contends that the evidence in the case at bar is as equally compatible with his innocence as it is with his guilt, and that therefore we should reverse the judgment. Such is not the law. Under such circumstances, where the court or jury by its decision or verdict rejects the hypothesis pointing to defendant's innocence, and there is evidence to support the implied finding of guilt as the more reasonable of the two hypotheses, an appellate court is bound by the finding of the triers of fact. (*People* v. *Tom Woo,* 181 Cal. 315 [184 Pac. 389]; *People* v. *Latona,* 2 Cal. (2d) 714 [43 Pac. (2d) 260].) It is only where there is no substantial evidence to support the conclusion reached by the court below that we can set aside its determination. In other words, unless the conclusion arrived at by the trial judge or jury does violence to reason, an appellate tribunal is without authority in law to substitute its finding as to the ultimate fact of guilt for that reached by the forum constituted as the final arbiter thereof.

For the foregoing reasons, the judgment and the order appealed from are, and each is, affirmed.

York, P. J., and Doran, J., concurred.