[Crim. No. 4551. Second Dist., Div. Three. Dec. 29, 1950.]

THE PEOPLE, Respondent, v. A. C. CARSON, JR., Appellant.

G. Vernon Brumbaugh for Appellant.

Fred N. Howser, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

SHINN, P. J.—Defendant was convicted in a trial to the court of two offenses: (1) for gain or hire, keeping and occupying a store, with books, papers, paraphernalia, etc., for the purpose of recording bets on horse races, and (2) for gain, hire, etc., recording and registering a bet or bets on horse races, in violation of section 337a, subdivisions 2 and 4 of the Penal Code. He was sentenced to terms in the county jail to run consecutively and he appeals from the judgments.

Defendant's principal contention is that the evidence was insufficient to prove either offense. There was evidence of the following facts: At the location in question there was a pool hall and bootblack stand on Central Avenue in Los Angeles; at the time of his arrest defendant was asked by the arresting officer, "Do you own this place?" and replied, "Yes, I am in partnership with a man by the name of Joe Stone." The officer, one Kubiak, in citizen's clothes, entered the premises with two other officers; he observed and heard defendant talking over a wall telephone but did not understand what he was saying; defendant had two small pieces of paper in his left hand and was looking at them; when he observed the officer he turned his back, stooped down, and tore up the pieces of paper and dropped them to the floor close to his feet where the officer picked them up. The pieces, restored to their original condition, were introduced as People's Exhibit A. Written on them were various numbers and two sets of initials "J.S." and "R.B." The officer, whose qualifications as an expert were stipulated to, testified that one of the numbers was the index number of a horse "Top's Boy," another number indicated a $1.00 win bet, and the initials "J.S." were descriptive of the bettor. Another numeral was the index number of a horse "Take Wing." The numeral "1" would indicate a $1.00 bet and the initials "J.S." were descriptive of the bettor. Two other numbers indicated two other horses running at Santa Anita, the numbers being placed to indicate a parlay from one horse in the sixth race to the other in the eighth race, the bet being a $2.00 bet and the initials "R.B." being descriptive of the bettor. Defendant denied that the writing on the paper was his own and declared to the officer that he had never taken a bet.

Another police officer, a qualified handwriting expert, made a study of the writing Exhibit A and the writing on a card from the police department files which latter, it was stipulated, contained pencil writing on both sides in the handwriting of defendant. This was introduced as People's Exhibit D. The witness having made a comparison of the writing on Exhibits A and D, testified to an opinion that all the pencil writings were made by the same person. There was also introduced in evidence by the People as Exhibit B a small pad upon the top page of which there was pencil writing. This pad was found by the officers on the shoeshine stand about 2 feet from where defendant was standing at the time of his arrest. Defendant denied to the officer that the writing on Exhibit B was his own. The writing on Exhibit B, according to the testimony, was similar to that on Exhibit A and was descriptive of bets on horses running at several tracks throughout the country. The handwriting expert, having compared the writing on Exhibit B with that on Exhibit D, testified to his opinion that all the writing was in the handwriting of the same person. Another Exhibit, C, was described as a "scratch sheet," which is one of the devices commonly used by bookmakers. This was found by the cash register, about 5 feet from where defendant was standing. At the time of his arrest defendant was asked to whom he was talking on the telephone and he answered that he was talking to his wife. He was asked why he tore up the papers he had in his hand and answered that he did not know. He did not testify either at the preliminary hearing or at the trial. The entire evidence at the trial was the testimony given at the preliminary hearing, with some additional cross-examination of the arresting officer.

Defendant's argument consists chiefly of quotations from decisions in which it was held, for various reasons, that the proof failed to establish some element of the offense of bookmaking. The facts in each of the cases relied upon differed in material respects from those of the present case. We find here no insufficiency of the evidence to prove the offenses charged. In the view we must take of the case, the trial court believed that defendant was one of the proprietors of the place of business, the shoe shining stand, or poolroom, or both; that he had in his hand papers upon which he had written notations of bets on horse races made by others; that he tore up these papers when he saw the officer approaching; that he had close at hand a pad of paper upon which he had

made notations of bets such as bookmakers usually employ in keeping the records of the bets of their customers and the results of races, and in addition had at hand a scratch sheet as one of the papers which he used in bookmaking activities. The facts were not in dispute. The incriminating circumstances were not explained by defendant at the trial and are not explained in his brief. They pointed unerringly to defendant's guilt as laid by each count of the information. (See *People* v. *Hinkle,* 64 Cal.App. 375 [221 P. 693].)

Since defendant was convicted of separate offenses he cannot properly complain that his sentences were made to run consecutively.

The judgments are affirmed.

Wood (Parker), J., and Vallée, J., concurred.