[Crim. No. 2962. First Dist., Div. Two. June 23, 1954.]

THE PEOPLE, Respondent, v. HOWARD WATKINS,
Appellant.

Andrew J. Eyman and Ralph Irby White for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and William K. Coblentz, Deputy Attorney General, for Respondent.

KAUFMAN, J.—This is an appeal by defendant Howard Watkins from a judgment of conviction on two counts of an information after trial by the court sitting without a jury. Appellant pleaded not guilty to the three counts of the information. He was acquitted on Count 2 and found guilty on Counts 1 and 3.

An information filed by the District Attorney of the City and County of San Francisco charged Howard Watkins with the crime of a felony, violation of section 337a, subdivisions 2, 4 and 6 of the Penal Code (bookmaking and pool-selling). Count 1 charged defendant with unlawfully and feloniously occupying premises at 128 Balboa Street, with books, papers and paraphernalia for the purpose of recording and registering bets, wagers and for selling pools on horse races on or about September 17, 1952. Count 2 of which he was acquitted, charged that on or about September 17, 1952, defendant wilfully, unlawfully and feloniously recorded and registered bets and wagers on the results of horse races. Count 3 charged violation of subdivision 6 of section 337a, Penal Code, in that on or about September 17, 1952, defendant did wilfully, unlawfully and feloniously lay, make, offer and accept bets and wagers on the results of horse races.

Appellant's motion for probation was denied and he was sentenced to six months in the county jail and a fine of

$2,000 was imposed, defendant to serve one day for each $5.00 of the fine remaining unpaid.

Two witnesses testified for the prosecution, Carl W. Anderson and Inspector Marion Overstreet of the San Francisco Police Department. It was stipulated that Overstreet was an expert on bookmaking. Defendant did not take the stand. There were no witnesses for the defense.

Inspector Overstreet testified that on September 17, 1952, he visited Carl's Signal Service Station at 1001 Franklin Street, where he met and spoke to Carl Anderson. There he found a scratch sheet and a small Signal Oil Company tablet (Peo. Exh. 2). The tablet, he said, was a bookmaker's account. Anderson told Overstreet that these were records of bets for that day, September 17, 1952. On cross-examination Overstreet testified that Anderson told him that the figures on page 2 of Exhibit No. 2 were written by appellant as the balances that were due on how he was to collect from the bettors. The bets on the third and fourth sheets were written by persons other than Anderson—by the bettors themselves, with the exception of the bets on the last three lines which were in Anderson's handwriting and were his own bets. The telephone number at Carl's service station was GRaystone 4-9886.

Carl Anderson, an auto mechanic, was on September 17, 1952, employed at Carl's Signal Service Station, Ellis and Franklin Streets in San Francisco. He testified that he met Inspector Overstreet on that day at the service station. Later that day, he went to 128 Balboa Street, San Francisco and Inspector Overstreet was there as well as Officer Lawler of the San Francisco Police, and appellant. The witness had known appellant since 1949. He stated that he talked with appellant 10 or 11 times a day over the telephone and that he talked with him on September 17, 1952. Plaintiff's Exhibit No. 2 which Anderson identified as a record of bets for September 17, 1952, showed 16 bets for that day. He said he had phoned two of them to appellant, but hadn't had a chance to phone in the remainder.

Anderson was shown People's Exhibit No. 3, a piece of yellow paper with the lettered heading "Carl's Signal Service." Anderson said that on September 17, 1952, he first saw that paper at 128 Balboa Street. On the back of this paper were the words "Howard from Bill" in Anderson's handwriting. The witness said that this paper had been left at the service station with some money which was to be given

to appellant. He said that "Howard" was appellant and "Bill" was a bettor who came to the gas station, leaving money for Howard with the witness.

Inspector Overstreet testified that he went to 128 Balboa Street on September 17, 1952. Later Carl Anderson arrived there. Overstreet brought Anderson into the dining room where appellant Watkins was seated. Appellant said that he knew the witness by the name of "Carl Anderson." Overstreet asked Anderson if he knew appellant, and he acknowledged that he knew him by the name of "Howard" but didn't know his last name. He asked Anderson if appellant was the man with whom he had been making bets on horse races, and he said that he was such person. He was asked if he had made bets with him that day. He admitted that he had done so by telephone. When Overstreet asked appellant if that was right, appellant remained mute.

In the drawer of a small table on which the telephone rested, in the dining room of appellant's home, Overstreet found a small piece of paper with "Carl's Signal Service" in printing at the top (Peo. Exh. No. 3) and a white piece of paper (Peo. Exh. No. 4) with the number GRaystone 4-9886 on it, as well as the name "Carl" written thereon. Overstreet had observed earlier that day that GR-4-9886 was the telephone number of Carl's Signal Service Station.

Exhibit No. 3 was the yellow "Howard to Bill" memo which Anderson said had previously been attached to a $5.00 bill left at the station by one of the bettors for appellant. Overstreet said this paper contained the name "Reward," the amount 33 to the right of that name, and on the fifth line down "Carl—22—" and words "Lose two." In appellant's presence the inspector asked Anderson if the "22" represented bets made with appellant and Anderson replied in the affirmative. Appellant remained silent.

There was a telephone in appellant's home which had a switch about eight feet from the instrument. This switch placed in the wall, could not be distinguished from an ordinary light switch. When placed in an "off" position it rendered the telephone line dead. The switch was finally found to be connected to the light switch by a telephone company service man who had arrived with a special agent of the Pacific Telephone and Telegraph Company at Overstreet's request.

Shortly after the telephone switch was flipped to an on-position, the telephone rang. Overstreet answered it, and

heard a woman's voice ask, "It this Howard?" Overstreet said "No." She said "Where is he?" The inspector said that Howard had gone downtown. When she asked "Who is this?" he said, "This is Johnny." When he asked if he could help her she said, "Well, I had a couple of bets." He offered to take them and she said "Well, I don't know if it is all right——" He said "Well, if it wasn't all right, I wouldn't be here on the phone." Then she said, "Well, this is Jan," and continued, "On Dixie Lad and Kay Laddie. Dixie Lad, I want one to win and one to show, and Kay Laddie, one to win and one to show, and Catchie Lass, one to win, and I want to hook up Kay Laddie and Catchie Lass on a combination of one to win." He repeated the bets to her, and that ended the conversation. The telephone was immediately disconnected.

Inspector Overstreet asked appellant if he had installed the switch but he did not answer, nor would he answer any other question which the inspector asked regarding book-making. The telephone equipment and switch were introduced in evidence as People's Exhibit No. 5.

Anderson was not arrested by Overstreet as the inspector was of the opinion that the witness was one of the bettors and not a bookmaker. He found no evidence that Anderson received any percentage from appellant. He stated that he had never arrested anyone in the position of the witness Anderson on evidence similar to that given by said witness in this case. He also stated that had given Anderson no promise of immunity from arrest.

Appellant contends that the evidence is insufficient to support the judgment that appellant violated Penal Code, section 337a, subdivision 2. The corpus delicti of this crime is set forth in *People* v. *Foreman,* 112 Cal.App.2d 616 [246 P.2d 949], where it is stated that it is essential that the person so charged (1) keep or occupy the room, (2) that the room contain specified paraphernalia, (3) and that such occupancy and paraphernalia are for the purpose of recording or registering bets. It is conceded herein that the room in question was occupied by defendant and his wife at the time the alleged offense was committed. Therefore we do not have a situation such as existed in *People* v. *Simon,* 66 Cal.App.2d 860 [153 P.2d 420], which was reversed because although the evidence was sufficient to show the room was used for recording bets, it was insufficient to show that defendant so occupied it.

Appellant attacks People's Exhibits 3, 4 and 5 as being insufficient evidence of violation of section 337a, subdivision 2, which requires occupancy of premises "with a book or books, paper or papers, apparatus device or paraphernalia, for the purpose of recording or registering any bet or bets." Exhibit No. 3, the "Howard from Bill" memo found in appellant's dining room which the witness Anderson testified he had earlier left for appellant in the gas station with a $5.00 bill from the bettor. When questioned by Inspector Overstreet about this exhibit as well as No. 4, the paper containing the telephone number of Carl's Signal Service, appellant refused to answer. Overstreet's expert testimony was to the effect that Exhibit No. 3 was the record of a bet. ▮ There is nothing in the statute which requires that the record of the bet must be shown to be in the handwriting of the person occupying the premises. Whether or not it is proved to be in his handwriting would go merely to the weight of the evidence. Exhibit No. 3 could certainly be considered by the trial court as a record of a bet found upon appellant's premises which he did not at the time deny or explain when he was questioned concerning it. At the trial he did not take the stand in his own behalf. The trial court was therefore entitled to consider it as the record of a bet placed with appellant although it may be noted that to support a conviction under section 337a, subdivision 2, it need not be proved that any bet was made. (*People* v. *Gompertz,* 103 Cal.App.2d 153 [229 P.2d 105] ; *People* v. *Smith,* 113 Cal. App.2d 416 [248 P.2d 444].) The accusatory statements here were of a type which were admissible and were not of any of the types of accusatory statements held inadmissible in *People* v. *Simmons,* 28 Cal.2d 699 [172 P.2d 18]. Here all statements to the accused were made in the presence of Inspector Overstreet and the witness Anderson, both of whom testified at the trial and were subject to cross-examination. The circumstances were such that the trial court here could properly consider the failure of appellant to answer the questions of the inspector as to the exhibit found on appellant's premises.

▮ Appellant maintains that the telephone found on appellant's premises cannot be considered paraphernalia. He ingeniously argues that since the California statute when first enacted was based on section 351 of the Penal Code of the State of New York (see *Ex Parte Roberts,* 157 Cal. 472 [108 P. 315]), the construction given to the statute by the courts of that state is of great value and persuasive force in its

interpretation. Appellant says that the New York statute contained the word "paraphernalia" for the first time in 1877, and that since it is a historical fact that the first commercial telephone switchboard was not installed until 1878, it could not have been intended by the New York Legislature that the word paraphernalia could be interpreted as embracing telephones. Such a rule is helpful, of course, where no construction has been placed on the meaning of a statute by the courts of this state. However, California does not have to wait for New York to first construe the meaning of a term in such statute before her courts may do so. Our courts have heretofore referred to telephones as paraphernalia within the context of Penal Code, section 337a. (See *People* v. *Gompertz,* 103 Cal.App.2d 153 [229 P.2d 105]; *People* v. *Smith,* 35 Cal. App.2d 73 [94 P.2d 633]; *People* v. *Battaglia,* 107 Cal.App.2d 476 [237 P.2d 70]; *People* v. *Kobey,* 105 Cal.App.2d 548 [234 P.2d 251]. And see *State* v. *Caruso,* 3 Terry (Del.) 310 [32 A.2d 771, 774].)

 Appellant contends further that the word "paraphernalia" renders the statute unconstitutional for vagueness. He cites definitions of the legal meaning of the word as a wife's personal property exclusive of her dower. It is quite fantastic to presume that the Legislature had this definition in mind in using the language "book or books, paper or papers, apparatus, device or paraphernalia, for the purpose of recording . . . bets." Penal Code, section 7, paragraph 16, provides that words are to be construed according to their context and approved usage of the language, but technical words and phrases and those which have acquired a peculiar and appropriate meaning must be construed according to such peculiar or appropriate meaning. The word paraphernalia is not a technical word in the law of crimes, although it may be in the law of property. The word is a word in common usage. Roget's Thesaurus defines it is a noun, plural, meaning belongings, equipment, accessories. In construing this word in a statute concerned with bookmaking, the court in *State* v. *Caruso, supra,* pointed out that what is termed the law meaning of the word is not helpful, but that the definition in Funk and Wagnalls New Standard Dictionary, "miscellaneous articles, belongings" expresses the generally accepted meaning of the word.

 The statute does not require that the accused possess every item enumerated in the statute to be guilty of the offense. The items are in the disjunctive. He could therefore

be convicted with only a book, or a paper or an apparatus or a device or paraphernalia if the evidence showed that it was used by him in bookmaking. ▉ A telephone can certainly be included within the terms device or apparatus.

▉ The telephone conversation received by Inspector Overstreet from the caller "Jan" is certainly convincing evidence that the premises were used by appellant for bookmaking. The caller asked for appellant by name and stated that she wanted to make a bet, even though she knew it was not Howard who answered and before she inquired as to the identity of the speaker. (See *People* v. *Warnick,* 86 Cal. App.2d 900 [195 P.2d 552] ; *People* v. *Onofrio,* 65 Cal.App.2d 584 [151 P.2d 158] ; *People* v. *Reifenstuhl,* 37 Cal.App.2d 402 [99 P.2d 564].)

We conclude that there was ample evidence to warrant the conviction of appellant on Count 1.

Appellant was found not guilty on Count 2, recording and registering a bet. He contends that therefore he could not be guilty as an accomplice, accessory or principal to the recording of bets by the witness Anderson. ▉ It is true, however, that acquittal of a charge of violating one subdivision of Penal Code, section 337a, does not preclude use of facts relating to acts condemned by such subdivision in a prosecution for violation of another subdivision. (*People* v. *Smith, supra.*) He was convicted of Count 3, that he did unlawfully and feloniously "lay, make, offer and accept a bet or bets" on or about September 17, 1952. ▉ Inspector Overstreet testified that he brought Anderson into the dining room and in appellant's presence asked Anderson if appellant was the man he had been making bets with. Anderson said "It is." Overstreet said "Did you make bets with him today?" He said, "I did." Overstreet asked him how, and Anderson said "Over the phone." Overstreet stated that he turned to appellant and said "Is that right?" and appellant remained mute. If this testimony was admissible it obviously supported a finding that appellant accepted a bet or bets on September 17, 1952. Appellant maintains, however, that Anderson is an accomplice, and that a conviction may not be had upon the uncorroborated testimony of such accomplice. If Anderson is considered an accomplice then, of course, there is insufficient evidence to convict appellant of having accepted a bet on September 17, 1952. We have only Anderson's word that the offense was even committed. Anderson said he made a telephone call transmitting the bets recorded in the service

station to appellant. No one else testified that such a call was made. The records in the service station show that bets were recorded by Anderson and others. Exhibit No. 3 shows that Anderson and appellant knew each other; Exhibit No. 4 is subject to the inference that at some prior time Anderson had placed a bet with appellant, but these exhibits do not corroborate the fact that a violation of section 337a, subdivision 6, was committed on or about September 17, 1952.

It is true, as admitted by appellant, that the corpus delicti may be established by the testimony of an accomplice. (*People* v. *Mazzola*, 99 Cal.App. 682 [279 P. 211] ; *People* v. *Briley*, 9 Cal.App.2d 84 [48 P.2d 734].) Anderson's testimony is sufficient to establish that there was a violation of section 337a, subdivision 6, committed on September 17, 1952. There can be no question that Anderson was an accomplice subject to prosecution under section 337a, subdivision 6, the same charge of which appellant was convicted. The People argue that he was a mere conduit to the bookmaker. This in itself is an admission that he was some type of agent in bookmaking activities. The trial judge stated that it was a reasonable assumption that Anderson was engaged in bookmaking activities.

Corroboration, however, may be slight, as long as it in some degree tends to implicate the defendant. (*People* v. *Ames*, 39 Cal. 403; *People* v. *Wilson*, 25 Cal.2d 341 [153 P.2d 720].) Appellant's failure to deny when questioned directly by the inspector as to the placing of bets with him by Anderson on September 17, can be interpreted as an admission, and is some corroboration. As noted, supra, the circumstances under which the alleged admission was made were not such as would compel the trial judge to consider it inadmissible. (*People* v. *Simmons*, 28 Cal.2d 699 [172 P.2d 18].) Furthermore, we have the conduct of appellant in refusing to testify in his own defense. In *People* v. *Arbaugh*, 82 Cal.App.2d 971, 985 [187 P.2d 866], in considering the question of corroboration of an accomplice's testimony, it was noted that the jury might consider the fact that appellant made no attempt by his own testimony to contradict, explain or deny any of the circumstances established against him. There is sufficient evidence therefore to support the conviction under the third count.

It is conceded by the People that the case must be remanded so that a proper sentence may be imposed. Appellant was

fined $2,000, and he cannot be fined more than $500 for conviction of a misdemeanor under Penal Code, section 672. The maximum in this case therefore could not exceed $1,000.

In view of the foregoing the judgment must be reversed for the sole reason that the fine imposed is excessive.

Judgment reversed with directions to the trial court to reimpose sentence as provided for by law.

Nourse, P. J., and Dooling, J., concurred.