[Crim. No. 3300. First Dist., Div. One. May 23, 1957.]

THE PEOPLE, Respondent, v. EARL LUNDY, Appellant.

Kenneth C. Zwerin for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and William M. Bennett, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—Defendant appeals from an order granting probation after conviction of violating Penal Code, section 337a, subdivision 2, by keeping and occupying premises for the purpose of receiving bets upon horse races.[1]

Upon arraignment the defendant made a motion, which the court denied, to set the information aside on the ground that he was committed without reasonable or probable cause. That denial is not assigned as error but defendant does claim that the arrest and search (made without a warrant) were unreasonable, resulting in a verdict that rests upon evidence that was illegally seized.

The case was tried before the court without a jury and upon

---

[1]He was found not guilty of recording and registering bets (count II), of making, offering and accepting bets (count III), or of violating Health and Safety Code, section 11500, possessing marijuana (count IV).

the reporter's transcript of the proceedings had before the magistrate upon preliminary examination.

(1) *Does the verdict rest, in part, upon illegally seized evidence? No.*

▮ The officers placed a certain apartment under observation upon being informed that bookmaking was going on at a particular phone number, which they ascertained was at that apartment. The informant on a number of occasions had furnished them information as to illegal activities, information which proved reliable, having led to the detection of bookmaking activities.[2]

The officers kept the apartment under observation for several days. Defendant was seen to leave the premises each morning with his dog, drive to a certain cigar store and there purchase a racing form. He would then drive to one of the nearby parks and allow his dog to go for a run, returning at approximately 10:30 a.m. to the apartment. He would then remain at the apartment until about 6.

On one of these occasions, while his dog was running in the park, defendant tore up some papers and put them in a garbage can. The papers were recovered from the garbage can by the police. They proved to be three daily bulletins and sports reviews, and several pieces of lined white paper with figures written in pencil. One of the officers testified that these papers were bookmaking paraphernalia and correlated with each other as records of bets on the dates reflected on the rundown sheets or sports review.

On the day of the arrest one of the officers had the informant call the phone number listed for this apartment and place a bet. The officer, who listened in, testified that he watched the informant dial the number, heard a person at the other end of the line say "Yep" and then the informant related a series of numbers, plus the amount, plus his own initials, and that was all. The conversation ended at that point.[3]

Thereupon, the officers told the informant to go on his way and they proceeded to the apartment and made the arrest and search. It seems clear that this evidence furnished ample support for the magistrate's and the trial court's implied findings that the officers had "reasonable cause for believing" that defendant committed the felony which it was later found

---

[2]This evidence concerning the informant and the information given by him (limited to the question of the reasonableness of the search) went in without objection.

[3]This evidence concerning the informant's phone call (limited to the issue of the reasonableness of the search) went in without objection.

(upon sufficient evidence) had been committed. (Pen. Code, § 836, subd. 3.) The evidence included not only the information furnished by the unnamed informant[4] but the quite tangible circumstantial evidence observed and obtained by the officers themselves.

(2) *Is the evidence sufficient to support the verdict?  Yes.*
When they arrived at the apartment, three of the officers stationed themselves at the front door, one at the back door and one in the back yard.  The officers at the front rapped on the door, heard a window going up and then forced their way into the apartment.  The officer in the back yard saw defendant tear up pieces of paper and throw them out of the window.  These papers were pieced together and proved to be current records of bets for the day of the arrest.  In the apartment the officers found a copy of the Daily Bulletin and Sports Review, dated April 6, 1956 (the day of the arrest), a paperbound booklet entitled "Racing Parley Manual," a ruled note pad, and a number of other items which one of the officers (whom defendant stipulated is an expert) testified constitute bookmakers' paraphernalia, describing the use made of various of these items.

Defendant contends that there is insufficient evidence to establish his guilt since he might have been only academically interested in the literature found in his apartment.  This might be true as to the Daily Bulletins and Sports Reviews and to a lesser extent concerning the Racing Parley Manual, if this were all.  But actual records of bets were found.  Such records in the defendant's own handwriting were treated as furnishing support for a conviction in *People* v. *Carson*, 101 Cal.App. 2d 555 [225 P.2d 652].  There is no direct evidence here that the records were in the defendant's own handwriting, but since the defendant and his wife were the occupants of the apartment and defendant told the officers that his wife was not responsible for "anything that was transpiring in the apartment there," direct evidence would not seem to be necessary here.

Nor is it necessary for the prosecution to establish by direct evidence the purpose for which the room is being occupied.  The purpose in keeping the room can be inferred from all the surrounding circumstances. (*People* v. *Tepper*, 36 Cal. App.2d 525, 527 [97 P.2d 1002].)

---

[4]In this connection we exclude from consideration the evidence concerning the informant's phone call made in the presence of the officer (identified by note 3, above).  It is of little, if any, value.  The other evidence is ample without it.

It is a factual question: What reasonable inferences could the trial court have drawn from the evidentiary facts in the record? Of course, no two cases present identical sets of facts. But the following cases are sufficiently similar to each other and to this case, upon the facts, to convince us that here the evidence supports the verdict: *People* v. *Donaldson,* 130 Cal. App.2d 250 [278 P.2d 739]; *People* v. *Fox,* 126 Cal.App.2d 560 [272 P.2d 832]; *People* v. *Davis,* 65 Cal.App.2d 255 [150 P.2d 474]; *People* v. *Shapiro,* 50 Cal.App.2d 60 [122 P.2d 382].

(3) *Was defendant unreasonably restricted in his cross-examination? No.*

During his direct examination Officer Martin testified that he received information from a confidential source, that the confidential informant had given information that had proved reliable in the past, and was asked, ''what was the information that you had from your informant,'' when defendant's counsel interposed: ''I presume that this line of questioning is for the limited purpose of the reasonableness of the seizure. For that limited purpose, I will not object,'' whereupon the prosecutor said ''It is for that limited purpose'' and the court, ''It is allowed for that limited purpose.'' The direct examination was then resumed and the witness narrated without objection, the information given by the confidential informant.

During cross-examination of this witness, the following occurred: ''Q. [By defense counsel] From what source did you receive information that bookmaking activities were involved on the premises? MR. MAUERER: I am going to object to any part of the answer, on the ground that it would tend to disclose the identity of the confidential informant, your Honor. THE COURT: The objection is sustained.''

Without comment, defendant's counsel desisted, asking such questions as whether the informant was a member of the police department, male or female, and so on, all of which were answered but none of which was calculated to identify the informant.

A similar incident occurred during the testimony of Officer Lawler. He was about to relate the informant's phone call, which he had monitored, when defense counsel interposed: ''Again, counsel, I think if this is for the limited purpose as to the reasonableness of the search, there will be no objection.'' The Prosecutor: ''It is for that limited purpose, your Honor. THE COURT: That may be made a part of the record.''

Defendant cross-examined Lawler concerning this phone call, during the course of which the following occurred: "Q. [by defense counsel] Now, will you tell us as closely as you recall the conversation, what your informant stated over the phone? A. Well, I can't relate the whole conversation; that is, I don't think I can disclose the informant. MR. MAURER: I will, of course, object to any part of the conversation that would tend to disclose the informant. MR. ZWERIN: Q. I am not asking that. I am more interested in the conversation in which you concluded that a bet had been placed? A. Well, the conversation went something like this: The man dialed the number, and he got a response on the other end, and the answer was somewhat like 'Yep.' And he immediately commenced to give him a rundown number. Q. A rundown number. What you are telling us is what your conclusions are. I want the conversation. MR. MAURER: Just a moment. THE COURT: The objection is sustained. When an *answer* was asked of this witness as to what the defendant's words were, he said that it discloses the identity of the informant. So you may not ask him that. MR. ZWERIN: I am not asking the identity. The witness says there was a rundown number. THE COURT: That is what I was just saying. The rundown number is a part of the conversation you may not ask him about, because that, he says, will disclose the identity." Thereupon the prosecutor asked a few questions the answers to which showed how it was that the "rundown number" would serve to identify the person placing a bet. Defendant then, without comment, turned to a different line of questions.

We see in this no infringement upon defendant's rights. The evidence concerning the informer and the information received from him had already gone in, without objection, limited to the question of reasonableness of the search. Sustaining of the objections noted would not operate to disallow any of that evidence or to strike it from the record. Also, it looks very much as if defendant acquiesced in those rulings. At any rate, he did not give the magistrate any basis for holding inapplicable the statutory mandate that "A public officer can not be examined as to communications made to him in official confidence, when the public interest would suffer by the disclosure." (Code. Civ. Proc., § 1881, subd. 5.) He did not even hint at a need for the name of the informant, whether for the purpose of impeachment or any other purpose. When a party consents that information such as this go into evidence "limited" to the issue of the reasonableness of the search

(no probative bearing upon his guilt or innocence), he should speak up if he wants later to assert error for ruling out a question or two as to the identity of the informant. He should at least state a reason (perhaps a need for impeachment purposes; perhaps, for use in preparing his defense) why the public policy of full disclosure (Code Civ. Proc., §§ 2064, 2065) should in this instance prevail over the policy of nondisclosure (Code Civ. Proc., § 1881, subd. 5). Utter silence in that regard (he did not even say the informant was unknown to him) can not under the circumstances of this case serve as a predicate for reversal.

Moreover, defendant was not bound by the silence which he thus observed before the magistrate. He was not there on trial and he need not have submitted the case (after information filed) upon the record of the preliminary examination. By doing the latter without reservation or exception of any kind (save as to his motion pursuant to section 995, Penal Code) he gave the trial court no more assistance than he had given the magistrate in determining whether the state policy of disclosure or nondisclosure should prevail.

The judgment and the order appealed from are affirmed.

Peters, P. J., and Bray, J., concurred.