[Crim. No. 8077.   Second Dist., Div. One.   Aug. 14, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. DRUSILLA THOMPSON, Defendant and Appellant.

Walter L. Gordon, Jr., for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Robert H. O'Brien, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—Defendant was accused in three counts of violating section 337a of the Penal Code, as follows: Count 1, violating subdivision 1 thereof (bookmaking on horse racing); Count 2, violating subdivision 2 (occupying a room with books and paraphernalia for purpose of recording bets on racing); and Count 3, violating subdivision 6 (making or accepting a bet on racing). In a nonjury trial she was adjudged guilty on all counts. Probation was denied, and she was sentenced to imprisonment in the county jail for 90 days on each count —the sentences to run concurrently. She appeals from the judgment.

Appellant asserts that the evidence was insufficient to support the judgment as to any of the counts.

On June 28, 1961, Deputy Sheriff Havlovic found the telephone number, PL 9-9427, and a code, "Al for 36," in a bookmaking establishment which he and other officers had entered on that day. Based upon his experience in arresting bookmakers, he concluded that said code meant that "Al" was a bettor, and "36" was an agent. He also concluded that the telephone number was one which could be called for the purpose of betting on a horse. Another deputy sheriff made an investigation through the telephone company to ascertain the address to which the telephone number was registered. That officer advised Deputy Havlovic that the address was 226½ East 77th Street, Los Angeles. Then Deputy Havlovic and three other deputies went to the immediate vicinity of the address, where the other deputies kept the premises under surveillance while Deputy Havlovic went to a nearby telephone and called the telephone number, PL 9-9427. A female voice answered, "Hello," and the deputy said that he wanted "a parlay in the third to the fourth at Holiday Park from My Fox——." The voice said, "That's been scratched. Who is this?" The deputy replied, "This is Al for 36." The voice said, "Wait a minute. Where did you get this number, and who did you say this is?" He replied, "This is Al for 36." The voice said, "Where did you get this number, and who did you say this is?" He replied, "Rock gave it to me." The voice said, "Oh, that's Okay. I didn't recognize you." He said, "Since the third is scratched, just put two dollars on Jack Outlaw in the fourth." The voice replied, "Okay." He said, "And two dollars across on River Dock in the fifth." The voice replied, "Okay." According to the scratch sheet, National Daily Reporter, the names, "My Fox," "Jack Outlaw," and "River Dock" were names of horses that were

scheduled to run at tracks in the United States on that date. From previous investigations of "phone spots," Deputy Havlovic had ascertained that "Rock" was an agent and a good name to use on several spots in that area. After the deputy had finished the telephone conversation he went to the premises, and was told by the other officers (who were stationed there) that no one had entered or left the premises during the time he was making the telephone call. After Deputy Havlovic knocked on the front door, a woman who was later identified as "Rhone" answered (came to the door). The deputy asked her whether she lived there. She replied, "Yes." He asked her what her telephone number was. The number which was stated by her was the same as the number he had just called. He identified himself as a deputy sheriff, told her they (he and two other officers who were at the door) were making a felony bookmaking investigation, and asked if they might come in. She replied, "Yes, come on in. See for yourself." Deputies Havlovic, Barker, and Olson went into the house.

Deputy Havlovic testified: That when they were in the house he saw the defendant Thompson sitting at a dining room table, on which table there were a telephone and some pencils. He checked the number on the telephone and found that it was the number he had dialed. While the other deputies were searching the premises, he asked Mrs. Rhone if she lived there. She replied in the affirmative. He asked who the other woman (the defendant) was. She replied that she was a friend who visits her often. He asked the defendant what she was doing there and how she came there. She replied that she was visiting Mrs. Rhone and that she had come on the bus. He asked if she took the bet over the telephone. She said she did not know what he was talking about. After talking to the two persons, he recognized the voice of defendant as the voice he had heard over the telephone when he was trying to make the bets. While he was searching the premises he found the following things: Two National Daily Reporters under the cushions of the couch; the racing section of the "Examiner" with pencil notations on it; a table with a formica top; a box of Ajax cleanser and a wash cloth on a shelf about eight feet from the table. The cloth was wet and had evidence of cleanser on it. When he first entered the place, about one-third of the formica top of the table was wet, but after a while the top dried and there was evidence of cleanser on it. According to his experience with bookmaking para-

phernalia, the formica table top, the cleanser, and the cloth play a part in bookmaking in that such a top is used to record bets on horses in a manner that can be eradicated quickly in the event an operator is interrupted by the police. There was no notation on the top. Other articles which were found in the house were: A professional ABC type betting marker with notations thereon—"92-10-10" and "1"; a pad of professional betting markers; a betting marker with notations on the back of it—"5 Belmont 11-22," and "2-2W," which were bets on horses. The various articles so referred to were bookmaking paraphernalia. While he (witness) was in the house the telephone rang several times. On one occasion when he answered the telephone, the person who called said, "This is eight. In the fifth I want Side Trip 15-5." On another occasion a person said, "This is Jerry for 110" and "In the sixth give me Girondo, five, two and two, and in the seventh Quiet Eyes, five dollars to win and a two dollar across the board parlay on both." On another occasion a person said, "This is Amore, can I make the fourth." On another occasion a person said, "This is Thirty for Theodore. In the fifth I want Girondo, ten dollars to place."

Defendant testified: That on said June 28 she went to said address because she and Mrs. Rhone were going out for the afternoon. They were delayed there because Mrs. Rhone was trying to get a baby sitter to take care of her baby. She (defendant) did not know anything about the racing paraphernalia that was in the house. When "these fellows" (officers) came to the door, they asked Mrs. Rhone if they might come in. When they were in the house, they asked if they might look around. She replied in the affirmative, and asked what they were looking for. One of the men said, "The bookmaker." She said that she did not know what they were talking about. Defendant had not talked to anyone on the telephone after she arrived at the house about noon. The telephone had rung twice and Mrs. Rhone had answered it. None of the handwriting on any of the articles received as exhibits (the betting markers, etc.) was in her (defendant's) handwriting. Within the 15 minutes before the officers arrived there, she had not had a conversation on the telephone with anyone wherein someone gave her a name and said that he wanted to play some horses or said words to that effect.

Appellant argues that since the only evidence as to bookmaking, as charged in Count 1, was the testimony of the officer that he had placed bets with "a voice" by telephone,

and since there was no testimony to the effect that the voice—which he identified as defendant's voice—was unusual, there was no evidence to sustain the officer's opinion as to whose voice it was, and therefore the evidence was insufficient to support the conviction as to Count 1. ██ Bookmaking is the making of a betting book and includes the taking of bets. (*People* v. *Lomento,* 155 Cal.App.2d 740, 742 [318 P.2d 707].) ██ The taking of one bet is sufficient to justify a conviction (Pen. Code, § 337a; *People* v. *Lomento, supra*) and the bet may be oral and need not be recorded (*People* v. *Chaney,* 147 Cal.App.2d 740, 741 [305 P.2d 955]). ██ In the present case the evidence shows that the officer placed a bet with a female person who answered his call to telephone number, PL 9-9427, which was the number of the telephone at the house where defendant and another woman were at the time he placed the bet. During the telephone call several words were pronounced by the person who received the bet. During the time the officer was in the house (after the telephone call) he had conversations with the two women who were there. He testified that, after talking to the two women, he recognized the voice of defendant as the voice he heard when he was talking on the telephone. It was a question of fact, for the determination of the trial judge, as to whether it was defendant's voice that the officer heard on the telephone. There is no legal requirement that the officer's testimony, relative to recognizing a voice, be accompanied or corroborated by additional testimony that the voice referred to was an unusual one. The evidence was sufficient to support the conviction as to Count 1.

██ With respect to Count 2, appellant argues that the evidence was insufficient to show (1) that she kept or occupied the premises at said address; or (2) that any of the books, papers, or paraphernalia in the house belonged to her. She argues further that there was uncontradicted evidence that she was merely visiting there. Section 337a, subdivision 2, of the Penal Code provides: "Every person, . . . 2. Who, whether for gain . . . or gratuitously . . . keeps or occupies . . . any room . . . with a book or books, paper or papers, apparatus, device or paraphernalia, for the purpose of recording or registering any bet or bets . . . upon the result . . . of any . . . contest . . . of skill, speed or power of endurance of . . . beast . . .; or . . . Is punishable by imprisonment in the county jail or state prison. . . ." That section also provides: "This section shall apply not only to persons who may

commit any of the acts designated . . . as a business or occupation, but shall apply also to every person or persons who may do in a single instance any one of the acts specified. . . .'' The prosecution was not required to prove that defendant owned the premises (*People* v. *Ines,* 90 Cal.App.2d 495, 499 [203 P.2d 540]) ; or to prove that she owned the papers and paraphernalia. The charge in Count 2 was that she unlawfully kept and occupied a house with books, papers, apparatus, and paraphernalia for the purpose of recording bets on horse racing. The section 337a, subdivision 2, allegedly violated by defendant, does not require that the prosecution prove that the accused possessed every item enumerated in said subdivision—those items therein are specified in the disjunctive, and proof that the accused occupied a room and possessed only one of the items for the purpose of recording such a bet would be sufficient proof to justify conviction. (See *People* v. *Watkins,* 126 Cal.App.2d 199, 205-206 [271 P.2d 641].)

In the present case, when the officers entered the dining room the defendant was sitting at the table on which there was a telephone and some pencils. Several scratch sheets, several professional-betting-marker forms, and two betting markers with race-bet notations were in the house. Under the circumstances here, the trial judge could reasonably infer that the formica top of the kitchenette table, the cleanser, and the wash cloth, were ''paraphernalia'' within the meaning of said code section. Also, under such circumstances, it could be reasonably inferred that the telephone was a ''device or apparatus'' within the meaning of the section. (See *People* v. *Watkins, supra,* p. 206.) As above indicated, the evidence as to voice identification was sufficient to support a finding that defendant used the telephone in receiving bets on horse races. Furthermore, the evidence regarding the several telephone calls which came while the officers were in the house also indicates that the house was used for the purpose of recording bets on horse races. The evidence was sufficient to support the conviction as to Count 2.

In Count 3 defendant was accused of unlawfully offering and accepting a bet upon horse racing. Section 337a, subdivision 6, of the Penal Code provides: ''Every person, . . . 6. Who lays, makes, offers or accepts any bet or bets . . . upon the result . . . of any . . . contest . . . of skill, speed or power of endurance of . . . beast . . ., Is punishable by imprisonment in the county or state prison . . .'' The statements made hereinabove regarding the acts of defendant, the identification

of her voice, and the conditions prevailing at the house are applicable here. The trial judge could reasonably infer from the evidence that defendant accepted a bet. The evidence was sufficient to support the conviction as to Count 3.

Appellant contends further that she was not accorded a fair trial in that a statement by the judge, during the presentation of the prosecution's case, indicated that he had prejudged the case. Preceding that statement, the deputy district attorney had asked the officer what was said in the telephone conversations when he answered the telephone several times while he was in the house. The attorney for defendant objected thereto on the ground that the testimony would be hearsay. Thereupon a discussion ensued, between the judge and the deputy district attorney, regarding the legal sufficiency of the prior telephone conversation (with "a voice") to prove "bookmaking." The discussion was based upon the supposition that the telephone conversation with "a voice" (before entering the house) was the only evidence connecting the defendant with the alleged offense and that she was answering the telephone as an accommodation to the other woman. After such discussion the judge made the statement which is the basis of this contention. The statement was: "I am going to believe this witness without a question, that the defendant did talk to him, if he represents to this court that he recognized her voice over the telephone. He is a man of experience, and I have a high regard for him. The only question before me is the legal proposition whether that is sufficient to find this defendant guilty of bookmaking. I haven't heard the defendant's story yet, you understand. I am talking to this point. She may have a very satisfactory explanation; I don't know." Then the deputy said the testimony as to the several telephone conversations (after entering the house) was admissible to show the character of the premises. The judge said that he had "no question about that," and that such testimony might be introduced for that limited purpose. It thus appears that when the question arose as to the admissibility of the telephone conversations which were had after the officer was in the house, the judge reverted to the question as to whether the officer's testimony regarding the prior telephone conversation and his identification of the "voice" would be legally sufficient, if believed, to justify a conviction of "bookmaking." It seems that at that point in the trial the judge was uncertain as to whether the officer's testimony, even if believed, would be sufficient as a matter of law to prove bookmaking. In any

event, the first part of the judge's statement should not have been made. It appears, however, that the closing part of the statement, to the effect that he had not heard the defendant's testimony and that she might have a satisfactory explanation, indicates that he had not determined the case and that the first part of his statement was conditional upon a consideration of defendant's evidence. Furthermore, when the statement was made, the defendant did not take exception to it and thereby give the judge an opportunity to consider the alleged point that is now asserted. The statement does not constitute a ground for reversal. The contention that the defendant was not accorded a fair trial is not sustainable.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.