[Crim. No. 11523.   Second Dist., Div. Two.   Aug. 21, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ALBERT R. CONTI, Defendant and Appellant.

Forno & Lewis and Arthur Lewis for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Andrea S. Ordin, Deputy Attorney General, for Plaintiff and Respondent.

ROTH, P. J.—Appellant was charged by information in four counts with violations of Penal Code, section 337a, subdivisions 1-4, book-making. He waived jury trial. The court found him guilty as charged in count I (§ 337a, subd. 1, book-making and pool-selling); count II, (§ 337a, subd. 2, keeping and occupying premises for book-making and pool-selling); and count III (§ 337a, subd. 3), (receiving, holding and forwarding money in book-making, pool-selling.) He was found not guilty on count IV (§ 337a, subd. 4, recording and registering bets.)

Appellant was sentenced to county jail for 180 days on the

three counts, sentences to run concurrently. The sentence was suspended. Appellant was placed on probation for one year, and as a condition of probation, was required to pay a fine of $250.

The sole point raised and argued is the sufficiency of the evidence to sustain the verdicts.

At approximately 1 p.m. on January 7, 1965, Officers Knieriem and MacKenzie of the Los Angeles Police Department Central Vice Unit and Glen Groves, a special agent for the Department of Water and Power, arrived at the Department of Water and Power shops on North Main Street to investigate alleged book-making activity.

The three men, dressed in plain clothes, staked out the blacksmith shop for about two hours. Officer Knieriem testified he observed numerous people going in and out of the shop, and a number of people reading race sections of racing publications in the general vicinity. Knieriem saw Eulas Klines[1] seated outside the blacksmith shop reading the National Daily Reporter (a racing publication) and observed money and small slips of paper pass between Klines and persons who talked to him. He did not see appellant or Apodaca on this date, and left when Klines went into the blacksmith shop.

At approximately 11:30 a.m., on January 8, Officer Knieriem returned. He observed Klines sitting outside the blacksmith shop and passing the National Daily Reporter to various persons who made notations on slips of paper and handed them to Klines with money.

Just before noon, Klines entered the shop. Officer Knieriem went into the room adjoining the blacksmith shop from which he could see into the room Klines had entered. He saw appellant and Apodaca playing cards and another man reading the racing section of the Herald-Examiner. Right after the noon whistle sounded, the unnamed man handed some money and a slip of paper to appellant. Appellant took some bills out of his pocket and added this money to it; he gave Apodaca the slip of paper, which Apodaca put in a cigar box in a storage cabinet.

At about 1:10 p.m., appellant and Apodaca came out into the yard and began listening to a transistor radio. They listened to what sounded like race results from Santa Anita.

[1]Appellant, Klines and Frank Apodaca, were jointly charged, tried and convicted. Klines did not appeal. Apodaca requested dismissal of his appeal. (App. dism. June 27, 1966.)

Appellant related information from the radio to Apodaca who made notations on a pad. Appellant then called Klines. He had a short conversation with him, and handed him some money. Klines went to several different people in the area and gave them money, receiving in turn slips of paper. The unnamed man previously observed reading the race section of the Herald-Examiner, came up to appellant and gave him $3.00.

Officer Knieriem contacted his sergeant. The sergeant and Officers Knieriem, MacKenzie, and Murren entered the blacksmith shop and arrested appellant, Apodaca and three other persons for gambling.[2] Officer Knieriem advised appellant of his constitutional rights, and appellant stated: ''I know what my rights are. Don't touch anything on the desk.'' At the police station, about 15 minutes later, appellant said: ''We have been making book up there only about two weeks, and bookmaking has been going on for years, and no one has ever done anything about it.''

Appellant had $332.02 in his wallet when arrested. Approximately $66 was found at the water and power yard. Officer Knieriem also picked up in the shop several copies of the National Daily Reporter, portions of the Herald-Examiner and Los Angeles Times, and a cigar box containing slips of paper including one headed ''Santa Anita'' which in his expert opinion, were nonprofessional ''betting markers.'' In addition, a large pad of paper containing names of horses and amounts paid to win, place, or show was also found, along with two books with appellant's name on them, on one page of which was written ''Place, 26.00 tops,'' and ''Show, 13.00 tops.''

■ In reviewing the evidence to determine its sufficiency to support a judgment, we begin and end with the established rule that an appellate court must assume, in favor of the judgment, not alone the facts established by direct testimony, but in addition, the existence of every fact which may reasonably be deduced or inferred from the testimony. (*People* v. *Newland*, 15 Cal 2d 678, 681 [104 P.2d 778]; *People* v. *Chavez*, 240 Cal.App.2d 248, 251 [49 Cal.Rptr. 425].) ■ ''To warrant reversal, it must be made clearly to appear that, by no hypothesis, is there sufficient substantial evidence to support the conclusion of the lower court. [Citations.]'' (*People* v. *Moseley*, 240 Cal.App.2d 859, 863 [50 Cal.Rptr. 67].)

---

[2]Klines was arrested at a later time.

Appellant contends that to constitute a violation of section 337a, subdivision 1, "the record must reflect some activity which would constitute a violation of some other Subdivision thereunder."

█ The evidence outlined supports a finding that appellant and others accepted wagers on horses, followed the races to determine their outcome, made payments to those who placed winning bets with them and were generally engaged in book-making. Subdivisions 2-4 of section 337a specify independent violations based on the *manner* in which prohibited book-making activity is carried out. While in the course of book-making one or more of these subdivisions may be violated, subdivision 1 prohibits the general activity of book-making, and may be violated irrespective of explicit violations of other subdivisions. However, it should be noted that appellant clearly violated subdivisions 2 and 3 as well.

█ Section 337a, subdivision 2 prohibits keeping or occupying any premises with paraphernalia "for the purpose of recording or "registering" bets. Appellant contends there is no evidence "as would reasonably justify an inference" that he occupied the blacksmith shop and yard for this purpose.

Appellant concedes that the items found in the shop constituted "paraphernalia" within the meaning of the statute. The evidence shows that people came to the shop area, gave money and slips of paper concededly paraphernalia to appellant and others, and later were paid off at the shop. Appellant's statement to police about making book at the place "only about two weeks" is further evidence of the purpose in occupying the premises.

█ As stated in *People* v. *Lundy*, 151 Cal.App.2d 244, 247 [311 P.2d 601] : " [It is not] necessary for the prosecution to establish by direct evidence the purpose for which the room is being occupied. The purpose in keeping the room can be inferred from all the surrounding circumstances. (*People* v. *Tepper*, 36 Cal.App.2d 525, 527 [97 P.2d 1002].)"

Section 337a, subdivision 3, prohibits receiving, holding, or forwarding any money bet on races. Appellant contends that even though he was observed receiving money, since Officer Knieriem did not know what was written on the slip of paper handed him, the evidence is insufficient to support conviction for receiving money for bets.

█ Appellant was observed receiving money on two occa-

sions.[3] In the first transaction, he received money and a slip of paper which was placed in the cigar box by Apodaca Examination of the slips of paper in the cigar box showed they were nonprofessional betting markers. It is reasonable to infer, therefore, that the slip appellant received was, like the others in the box, a betting marker. This evidence was clearly sufficient to support a guilty verdict on count III. (See *People* v. *Thompson,* 206 Cal.App.2d 734, 740-741 [24 Cal.Rptr. 101] ; *People* v. *Goldstein,* 139 Cal.App.2d 146, 155 [293 P.2d 495].)

■    Appellant was given concurrent sentences on counts I, II, and III, each for violations of Penal Code, section 337a, each occurring on the same date. While he does not raise this issue, appellant was thereby subjected to double punishment within the meaning of Penal Code, section 654. (See *People* v. *McFarland,* 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449] ; *Neal* v. *State of California,* 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839].)

In *People* v. *Barthel,* 231 Cal.App.2d 827, 836 [42 Cal.Rptr. 290], defendant was convicted of violation of subdivisions 1, 2 and 4 of section 337a, sentences on each count to run consecutively. In reversing as to sentencing for failure to apply section 654, the court stated: ''The intent and objective of the defendant was to engage in bookmaking. Occupying the place containing the paraphernalia and registering bets were incidental and the means to her primary objective, which was obtaining money by placing bets. We hold therefore, that the trial court erred in not applying section 654.''

The order is reversed in so far as it imposes sentences on counts II and III. In all other respects, the order is affirmed.

Herndon, J., and Fleming, J., concurred.

---

[3]In the second transaction, appellant received $3.00 and apparently no marker was delivered.