[Crim. No. 10384.   Second Dist., Div. Four.   Jan. 3, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. SIDNEY CLARKE DOLLY, Defendant and Appellant.

H. George Taylor, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Robert A. Feldman, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendant was charged with rape in violation of Penal Code, section 261, subdivision 2. It was alleged that he accomplished an act of sexual intercourse upon a female person incapable, through unsoundness of mind, of giving legal consent to sexual intercourse. The court found defendant guilty as charged. Proceedings were suspended and defendant was granted probation. He appeals from the judgment (order granting probation).

Carol, the prosecutrix, was 20 years old at the time of the assault. She worked at the Cerebral Palsy Foundation. Defendant worked next door. At 7:30 p.m. on April 3, 1964, Carol went to defendant's apartment. This was the only occasion she had visited his apartment. She was accompanied there by a young man who worked with her at the foundation. After a short time the young man left at defendant's request and Carol was alone with defendant. After telling her to take off her dress, defendant carried Carol into the bedroom. He told her to remove her girdle. She complied and then removed the rest of her clothing and got into bed. After pulling the sheets down defendant began ''hurting'' her at the ''bottom'' of her body, the part she used when she ''went to the bathroom.'' She stayed all night with defendant in the apartment. Officer Lionel Robert went to defendant's apartment at 11:30 a.m. on April 4, 1964. After defendant answered the door and the officer entered the apartment, he observed Carol in the bedroom arranging her clothing—she was pulling her dress down over her hips. Carol and defendant were alone in the apartment at the time.

In Carol's testimony she indicated that she had no idea how babies were born or where they came from. ▮▮▮ She read a letter which defendant gave to her (People's Exhibit 3):

"THE WITNESS: (Reading)

" 'Dear Carol,

" 'Since you know my feelings for you, what are you going. to do about it? I would like you to spend some time with me alone. Yes?'—I have spent some time with me alone—I get confused. Oh. 'I have just moved into a new house. I know you will like it very much. Carol, my pretty girl. I like you to be shy. (Smile). I like you more than as a friend. I would love to kiss and love you very much, pretty. I would like to see you soon. That's if you want to. And I mean alone. Yes? Write me soon and let me know.' "

Barry Lee Dyer, a vocational psychologist at the United Cerebral Palsy Association with 10 years experience in counseling and in giving intelligence tests, tested Carol commencing on September 25, 1963. The tests were designed to measure intelligence, personality aptitude and perceptual disorder. His opinion, based on these examinations, was the following: "Carol Jean has a peculiar distribution of intellectual ability, not unlike some found among brain damage people and, of course, there is ample evidence of brain damage in Carol's case. In terms of verbal intelligence we arrive at an IQ of 68."

"Depending on the base that is used, this would place the mental age somewhere between eight years and five months, and nine years and nine months."

Defendant contends the evidence was insufficient to support findings (1) of sexual intercourse, (2) that the prosecutrix was incapable through unsoundness of mind of giving consent to the act, and, (3) that he had knowledge of her lack of mental capacity. These contentions are without merit. ▮▮▮ That the required sexual penetration took place could most certainly be inferred from the evidence presented which showed that the prosecutrix was alone with defendant, undressed and in his bed; he was in such proximity to her that his hands were behind her back; he began "hurting" her in the vaginal area causing bleeding from inside the vagina.

▮▮▮ On the issue of whether the prosecutrix was incapable of giving legal consent to the act of intercourse by reason of her being of unsound mind, there was expert testi-

mony that a few months prior to the assault she was given intelligence tests which showed brain damage and that she had the mentality of a child of 8 or 9. In addition, the prosecutrix was present in court—where the court had the opportunity to observe her demeanor—and the record shows that she was questioned extensively both by the court and counsel. Her answers to these questions tend to support an inference that she was mentally deficient. ■ The statutory requirement is that the prosecutrix is incapable through lunacy or other unsoundness of mind of giving legal consent (*People* v. *Stilwell,* 165 Cal.App.2d 786, 788 [332 P.2d 348]), which consent ". . . presupposes an intelligence capable of understanding the act, its nature and its possible consequences." (*People* v. *Boggs,* 107 Cal.App. 492, 495 [290 P. 618].) In *Boggs, supra,* the court held that there was sufficient evidence that the prosecutrix, a woman 22 years of age, was incapable of giving legal consent, upon a showing that she had the mentality of a child of 10 or 12 years and with only a child's understanding of the nature and consequences of sexual intercourse. ■ We cannot say that the trial court's finding here, based in part upon observations made in the courtroom, is unsupported. ■ "The trier of the fact is the sole judge of the weight and worth of the evidence. [Citations.]" (*People* v. *Hills,* 30 Cal.2d 694, 701 [185 P.2d 11].)

■ Finally, defendant argues that the prosecution had the burden of proving that he had knowledge of the victim's lack of capacity to give consent, and that it failed to carry this burden. Defendant relies on *People* v. *Hernandez,* 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673], which holds that a statutory rape charge is defensible, upon defendant's showing of his lack of criminal intent because of his honest and reasonable belief that the prosecutrix was old enough to consent. Presumably, the same rule applies to a case involving lack of mental capacity. Here, however, defendant elected not to testify and presented no defense. Furthermore, there was evidence to support a finding that defendant was aware of the lack of mental capacity of the prosecutrix. It is inferable from this record, including the letter from defendant to the prosecutrix above quoted, that defendant had been acquainted with the prosecutrix for some time prior to the alleged offense, and thus had had an opportunity to know about her condition. The trial court could reasonably have concluded from the evidence that the retarded mentality of the prosecu-

trix was obvious enough that it must have been known to an acquaintance such as the defendant.

The judgment of conviction is affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied January 20, 1966, and appellant's petition for a hearing by the Supreme Court was denied March 2, 1966.