[Crim. No. 10288.   Second Dist., Div. Four.   Mar. 16, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JERRY MOSELEY, Defendant and Appellant.

James A. Irwin, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attornel General, William E. James, Assistant Attorney General, and Ronald M. George, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant Moseley was charged, jointly with William Joseph King, Norman Lee Malone, Tommy Willis Lee, and Robert Smith, with sundry offenses involving Diane Lawson, a 16-year-old girl. In Count I, Moseley, King and Malone were charged with pimping, in violation of section 266h of the Penal Code; in Count II all five defendants were charged with pandering, in violation of section 266i of the Penal Code; Count III charged King with statutory rape, in violation of subdivision 1 of section 261 of the Penal Code; Count IV made a similar charge of statutory rape as to Malone; Count V charged statutory rape as to Moseley. After a jury trial, Moseley was found guilty on Counts I, II and V; King was found guilty on Counts I, II and III; Malone was found not guilty on Count I, but guilty on Counts II and IV; Smith was found not guilty. The jury recommended a county jail sentence on the statutory rape counts. King and Moseley were sentenced to state prison on the pimping and pandering counts and to the county jail on the statutory rape counts, the sentences to run concurrently.[1] King and Moseley appealed. King's appeal was dismissed by this court, under California Rules of Court, rule 17a, for failure to file a brief. We are now concerned only with Moseley's appeal.

---

[1]The record before us is silent as to the disposition of the case as to Malone.

## Summary of Facts

The case for the prosecution rested on the testimony of the prosecutrix, Diane C. Lawson. Miss Lawson testified that she was, at all material times, 16 years of age; that she left home voluntarily (although she at one time complained to the police that King had stolen her from her home); and that her mother filed a missing person's report on her after she left.

Two weeks after leaving home, Diane and her roommate, Tamara Duvall, came out of a nightclub, or bar, on Western Avenue. They saw Moseley and Ross, whom Tamara knew; the two girls and the two men then went to an apartment building where they met King. A conversation ensued between King and Diane in the presence of Moseley, where King said, "You must be the sixteen year old . . . that had left home and her mother." Diane just sat there and smiled. King said to Diane that he was a pimp and would be happy if she started working for him, being a prostitute or soliciting. Diane testified that she had never before been a prostitute.

Moseley and Smith drove Diane to pick up her suitcases and then brought her to an apartment on Stocker Street. Diane began soliciting the next day; she brought men to a place on Crenshaw where she had sexual intercourse with them for money. Her association with King ended sometime later because she didn't have enough clients.

At the end of November, Diane "ran into" Moseley. He asked her to come and be "his woman" and to go to "work for him." She went to live at a house on Carmona Street with Moseley and Malone, where she had sexual intercourse with men for money. She gave the money to Malone or to Moseley, and also she had sexual intercourse with Moseley. Later Diane and another young woman went with Moseley and Malone to the Thunderbird Motel where Diane again had sexual intercourse with men for money. Diane testified that she turned the money over to Moseley.

Diane testified that she and King, at King's suggestion, went to obtain a driver's license for her during the time she was living at the Stocker Street address. She testified that she listed her age on the application as 22, and the license she obtained, under a false name, also listed her age as such. Furthermore, when Diane was arrested some time later, the police believed that she was 22 years of age.

Diane testified that she came to defense counsel's office where she made sworn statements which were in part untrue,

862

and these untrue statements were made while acting under threats.

Moseley denied receiving proceeds from Diane's acts of prostitution, denied asking her to become a prostitute, denied knowing that she was 16 when he met her, and also denied having had sexual intercourse with her.

I

██ Moseley argues that the trial court committed reversible error in failing to instruct the jury that if he reasonably believed the prosecutrix to be over the age of 18 years, he would not be guilty of statutory rape. In the case of *People* v. *Hernandez* (1964) 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673], decided July 9, 1964, it was held reversible error to refuse to permit a defendant in a statutory rape case to present evidence showing he had a good faith belief that the prosecutrix was over 18 years of age. That case overruled the long standing rule of law that the reasonable belief of the defendant was not a valid defense.

The decision in the *Hernandez* case was filed subsequent to the submission of the present case to the jury and one day prior to Moseley's motion for new trial made at the probation and sentencing hearing. Understandably, Moseley did not offer such an instruction to the trial court. The case of *People* v. *Nigri* (1965) 232 Cal.App.2d 348 [52 Cal.Rptr. 679], is relevant. That case dealt with a defendant convicted of statutory rape in a trial which occurred before the *Hernandez* decision. On appeal, the court in the *Nigri* case held that the defendant is entitled to a new trial for the purpose of showing that he reasonably believed the prosecutrix's statement that she was 18 (instead of her true age of 15 years and 9 months), despite the fact that Moseley made no such offer of proof in the trial court. This view is consistent with the view in the case of *People* v. *Kitchens* (1956) 46 Cal.2d 260, 262-263 [294 P.2d 17], which states that: "A contrary holding would place an unreasonable burden on defendants to anticipate unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule of evidence would be changed on appeal."

Plaintiff attempts to distinguish the instant case on the ground that in the *Nigri* case the prosecutrix actually lied to the defendant about her age. However, the essence of the defense in the *Hernandez* case is not whether or not the prosecutrix lied about being 18, but whether or not defendant had

a *reasonable belief* that the prosecutrix was 18. In the case before this court it was shown that Diane had a driver's license listing her age as 22, and also that the police were led to believe that she was 22. The fact that King may have known that this age was false does not necessarily mean that Moseley knew it was false, and even if he knew Diane was not 22 years old, he may not have known she was less than 18 years. Further, Diane's silence in response to King's statement that she must be the 16-year-old "that had left home and her mother" was equivocal behavior. Her silence could have been interpreted by Moseley as meaning that she was not that person or, on the other hand, that she was that person, or, that who she was was no concern of either King or Moseley.

Since a result more favorable to Moseley was possible had the instruction under discussion been given, the judgment on Count V (statutory rape) must be reversed.

## II

Defendant Moseley's second contention—that the evidence was inherently unreliable, in part impossible, and insufficient to support the verdict—is without merit. On appeal, the evidence and inference must be viewed in a light most favorable to the respondent. (*Crawford* v. *Southern Pac. Co.* (1935) 3 Cal.2d 427 [45 P.2d 183].) To warrant reversal, it must be made clearly to appear that, on no hypothesis, is there sufficient substantial evidence to support the conclusion of the lower court. (*People* v. *DePaula* (1954) 43 Cal.2d 643, 649 [276 P.2d 600].) In *People* v. *Burroughs* (1962) 200 Cal.App.2d 629 at p. 633 [19 Cal.Rptr. 344], it was said that "In order to hold that evidence is inherently improbable and unworthy of belief it must appear that the facts testified to are such as would amount to a physical impossibility and be unbelievable per se."

Although Diane's testimony discloses a sordid and disgusting series of events, we can see nothing in it that was impossible or improbable. Clearly, if believed, it was sufficient to support the verdicts. Whether or not she was a reliable witness was for the jury to determine. The jury believed her; its determination binds us.

The judgment is affirmed as to Counts I and II; it is reversed as to Count V.

Files, P. J., and Jefferson, J., concurred.