[Crim. No. 236.   Fifth Dist.   June 6, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES B. WINTERS, Defendant and Appellant.

Lawrence W. Clawson, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse and Ronald W. Tochterman, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant was convicted of statutory rape (Pen. Code, § 261, subd. 1); the judgment was entered September 14, 1965, the notice of appeal was dated September 29, 1965, and it was received by the County Clerk of Kings County on October 4, 1965, having been sent by the defendant from state's prison. When the defendant applied to this court for leave to file a late appeal, his request was granted, and the appeal itself, pursuant to the order of this court, was filed by the county clerk on October 19, 1965.

Initially, the Attorney General urges that the notice of appeal was not timely filed and that the appeal should be dismissed, because, as he alleges, this court did not have before it exceptional circumstances justifying the order. There is no merit in the Attorney General's contention. It is true that rule 31(a) of California Rules of Court provides, in the normal case, that an appeal from a criminal judgment must be filed within 10 days after its rendition; however, the rule contains an exception, as follows: "Whenever a notice of appeal is received by the clerk of the superior court after the expiration of the period prescribed for filing such notice, the clerk shall mark it 'Received (date) but not filed' and advise the party seeking to file the notice that it was received but not filed because the period for filing notice of appeal had elapsed and that he may petition the reviewing court for relief by verified statement or declaration under penalty of perjury, setting forth the date of the order or judgment from which the party seeks to appeal, the steps which the party took to file his notice of appeal on time, and any other information which has, or which the party believes has, a bearing upon the circumstances which caused the notice of appeal to arrive late."

The Supreme Court, in a series of recent opinions, has made it clear that "The power to grant such relief should be liberally exercised to avoid, if possible, the loss of the right to appeal." (*People* v. *Collier*, 62 Cal.2d 543, 544 [43 Cal.Rptr. 1, 399 P.2d 569].) Among the factual situations which require

the relaxation of the strict provision is one in which it appears that the defendant ". . . requests his trial counsel, within the 10-day period, to appeal, and the attorney does not do so, . . .") (*People* v. *Krebs,* 62 Cal.2d 584, 585 [43 Cal.Rptr. 331, 400 P.2d 323].) See also, as to the relaxation of the 10-day rule *People* v. *Casillas,* 61 Cal.2d 344 [38 Cal.Rptr. 721, 392 P.2d 521]; *People* v. *Tucker,* 61 Cal.2d 828 [40 Cal.Rptr. 609, 395 P.2d 449]; *People* v. *Johnson,* 61 Cal.2d 843 [40 Cal.Rptr. 708, 395 P.2d 668]; *People* v. *Flanagan,* 62 Cal.2d 63 [41 Cal.Rptr. 85, 396 P.2d 389]; *People* v. *Diehl,* 62 Cal.2d 114 [41 Cal.Rptr. 281, 396 P.2d 697]; *People* v. *Curry,* 62 Cal.2d 207 [42 Cal.Rptr. 17, 397 P.2d 1009]; *In re Notz,* 62 Cal.2d 423 [42 Cal.Rptr. 321, 398 P.2d 593]; *People* v. *Madrid,* 62 Cal.2d 602 [43 Cal.Rptr. 638, 400 P.2d 750]; *People* v. *Jackson,* 62 Cal.2d 803 [44 Cal.Rptr. 452, 402 P.2d 140]; *People* v. *Davis,* 62 Cal.2d 806 [44 Cal.Rptr. 441, 402 P.2d 129]; *People* v. *Garcia,* 63 Cal.2d 265 [46 Cal.Rptr. 324, 405 P.2d 148].

In support of his request for a late appeal, the defendant filed with this court a declaration under penalty of perjury stating that, before his departure for the California Medical Facility, his appointed attorney ". . . assured me that he would file the necessary Notice of Intent to Appeal in my behalf and I would receive a verification of this action. Upon my subsequent knowledge that no such action had taken place in my behalf, I submitted the necessary papers." Under the rulings of the Supreme Court above cited there can be no question that this court not only had jurisdiction to make the order but was required to do so on the defendant's showing.

The notice of appeal filed in propria persona by the defendant states that he appeals ". . . the conviction . . . on September 14, 1965." While it was held as late as 1958 that an attempted appeal from the verdict of the jury should be dismissed (*People* v. *Croxton,* 162 Cal.App.2d 187 [327 P.2d 611]), it appears to us that there also has been a marked relaxation of the former requirement that an appeal may be taken by a defendant from the "final judgment of conviction," which are the words used in section 1237 of the Penal Code authorizing a criminal appeal. For example, the Legislature amended section 1237 of the Penal Code in 1961 to allow an appeal from a "sentence." Furthermore, rule 31(b) of the California Rules of Court requires that: "The notice [of appeal] . . . shall be liberally construed in favor of its sufficiency." Recent rulings of the appellate courts have

followed the spirit, as well as the letter, of this rule. (*People* v. *McDonough*, 198 Cal.App.2d 84, 86-87 [17 Cal.Rptr. 643].) It is our view that this is properly an appeal from the judgment or sentence, and we shall so consider it.

Were it not for the recent opinion in *People* v. *Hernandez*, 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673], there could not be the shadow of a doubt of the propriety of the conviction. The defendant, 29 years of age, had been previously convicted of two felonies of which one was rape; he admitted that on June 27, 1965, he had sexual intercourse with Jacquelin Webb, aged 15, to whom he was not married. He contended at the trial, however, that he believed that Jacquelin was 19 years old at the time of the alleged crime. The victim had been left by her mother and father, Los Angeles people, with a cousin of the mother; her home was located between Hanford and Corcoran in Kings County, and she worked as a waitress in a Corcoran restaurant; the young girl had accompanied the cousin to the restaurant on several days during working hours. After talking with Jacquelin at great length on numerous occasions, the defendant finally had sexual intercourse with her.

Section 261 of the Penal Code provides in applicable part: "Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under either of the following circumstances:

1. Where the female is under the age of 18 years; . . ."

In 1896, the opinion in *People* v. *Ratz*, 115 Cal. 132, 134-135 [46 P. 915], laid down the following rule in the lucid language of Mr. Justice Henshaw: "Appellant contends that, even though the child be shown to have been under the age of fourteen years [then the age of consent], yet that, if the defendant had reason to believe, and did believe, that she was over the age of fourteen years, then there was an absence of the necessary intent to constitute a crime, and that he should be acquitted. He asked the court to give an instruction to the jury embodying this as a proposition of law. The proposed instruction was refused. The refusal is assigned as error.

"The claim here made is not a new one. It has frequently been pressed upon the attention of courts, but in no case, so far as our examination goes, has it met with favor. The object and purpose of the law are too plain to need comment, the crime too infamous to bear discussion. The protection of society, of the family, and of the infant, demand that one who has carnal intercourse under such circumstances shall do so in

peril of the fact, and he will not be heard against the evidence to urge his belief that the victim of his outrage had passed the period which would make his act a crime.''

This principle was considered sound from that time until the filing of the *Hernandez* opinion; it was the universal basis of the administration of the criminal law on that subject in California. ██ The *Hernandez* case, however, requires the People, in a statutory rape case, if the defense of lack of criminal intent is raised, to prove that the defendant did not have reasonable cause to believe that the victim was over 18 years of age. ██ The logic of this holding requires the jury to pass on two questions: (1) did the accused honestly believe that the complaining witness was 18 years of age or over? and (2) if so, was that the belief of a reasonable man? If the jury finds that the defendant did not really believe that the consenting girl was over the statutory age of consent, or that if he believed that she was over 18 he was not acting as a reasonable person in the circumstances, it may convict him.

The record on appeal does not contain the charges to the jury which were given by the court. Under established appellate law, we must assume that the instructions were adequate and proper (*People* v. *Danielson,* 203 Cal.App.2d 498, 508 [21 Cal.Rptr. 469]; *People* v. *Crawford,* 105 Cal.App.2d 530, 537 [234 P.2d 181]), and that the jury decided the question of intent on the facts. ██ There is ample substantial evidence to support the jury's implied finding that appellant, as a reasonable man, knew that the Webb girl was 15 years of age. Her cousin, Omie Thurman, testified that before the crime she told Winters ''that she [Jacquelin] was fifteen years old, and I didn't want no trouble because the mother left her in my care.'' Several prosecution witnesses corroborated Mrs. Thurman's testimony in that regard. The Webb girl gave evidence with respect to conversations with the defendant on Friday, June 25, and Saturday, June 26: ''Q. Now, during your conversation where you were alone with Mr. Winters on Friday and Saturday, did you mention anything about your age? A. Yes. Q. What did you tell him? A. Well, while he was talking about marrying me I told him that I couldn't marry him, you know, that I wanted to finish school. Even if I could I couldn't because I was a minor.'' Mrs. Thurman further testified that on the evening of June 27, 1965, the defendant asked if he could take Jacquelin to her home, and Mrs. Thurman at first refused by stating to him, ''No, she is only fifteen years old.''

It is true that the record also contains evidence on behalf of

the defendant from which the jury might have concluded that appellant believed that the girl's age was 18 or over. However, this merely created a conflict, and it is our duty after conviction to view conflicting evidence in the light most favorable to the respondent. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778] ; *People* v. *Rodriguez,* 168 Cal.App.2d 452, 459 [336 P.2d 266].)

Appellant complains that he was prejudiced by the fact that during the cross-examination by his own counsel of Johnny David Webb, father of the victim, the witness volunteered as part of an answer that the defendant had told him that he had been in prison before; this evidence was as follows: ''Q. Was he endeavoring to explain what had happened the evening before to you? A. Yes. He was crying and pleading for us not to prosecute; said that he would get ten years. I said, 'Why will you get ten years?' And that is when I found out that he had been in prison before.''

There was no motion to strike, and no request for an admonition to the jury to disregard any portion of the answer. It is true that on the day following the testimony, defense counsel moved for a mistrial, which was denied. At that point, the trial judge observed: ''It is a danger of cross-examination that information will be elicited which will be adverse to the client's position, . . .

''I think the matter can be covered by instructions if you want to submit one that the defendant's guilt or innocence is to be determined solely from the evidence as to what was done or not done upon this particular occasion and any other matters are to be excluded.

''The Court will be glad to give any instruction that would place upon the jury the responsibility of determining his guilt or innocence without regard to that. I realize you wouldn't want to refer to a prior criminal action or conviction, but I think the point can be brought home to the jury without giving or importing to them unnecessarily what you have in mind.''

Again, we point out that the instructions were not contained in the record, as no request was made by defendant for their inclusion. We must assume that the defendant proposed adequate instructions on the subject, and that they were, in fact, given.

In any event, no error in the respect specified could have been prejudicial; for it appears from the record that the defendant himself, when on the witness stand, was asked if he

had ever been convicted of a felony, and he replied that he had been found guilty of rape in 1957, and also of robbery. (*People* v. *Richardson,* 192 Cal.App.2d 166, 169 [13 Cal.Rptr. 321].)

The last point raised by appellant is that he should have been granted a new trial because of the alleged misconduct of one of the jurors who is said to have slept at times during the trial. Evidence taken by the court, on the motion for a new trial, was that this juror nodded several times, closed his eyes and held his head in his hand with his arm supported on his chair; it was also said that on returning to the jury box after two recesses, his pants were wet.

The trial judge, indicating that he had observed the juror, and had "happened to be watching his eyes" found that: ". . . [T]he juror was having difficulty in staying awake. His head appeared to nod and then he quickly recovered himself. . . . [W]hile his lids did go down part way over his eyes, he did not completely go to sleep. . . . [T]his only occurred for a fraction of an instant, and in each instance he recovered quickly.

". . . . . . . . . . . .

". . .[T]his juror in question did listen to the evidence and, while he did have, perhaps, a little difficulty in staying awake, . . . he did stay awake." The trial judge ruled adversely to the defense claim that the juror had been guilty of misconduct, and, as he acted on substantial evidence, we cannot overrule him. (Witkin, Cal. Criminal Procedure (1963), Judgment and Attack in Trial Court, § 582, pp. 583-584.)

The judge further observed that as the defendant and, in part, his counsel had noted the juror's alleged shortcomings during the trial, it was their duty to call the court's attention to the situation promptly during the trial itself. A defendant, or his counsel, observing improper conduct of a juror, may not keep the misfeasance hidden, speculate on receiving a favorable judgment, and for the first time, after an adverse verdict, publicly characterize the misconduct as prejudicial. (*People* v. *Crawford, supra,* 105 Cal.App.2d 530, 540.)

The judgment is affirmed.

McMurray, J. pro tem.,* concurred.

Stone, J., concurred in the result.

*Assigned by the Chairman of the Judicial Council.