[Crim. No. 12895. Second Dist., Div. One. Sept. 7, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. MIKE MORENO MORALES, Defendant and Appellant.

Albert D. Silverman, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip L. Siracuse, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was convicted of kidnaping (§ 207, Pen. Code) and violations, sections 288 and 288a, Penal Code; an alleged prior felony conviction (§ 211, Pen. Code) was found to be true. He was found not to be a mentally disordered sex offender; his motion for a new trial was denied and he was sentenced to the state prison. Defendant appeals from the judgment and order denying motion for new trial; the purported appeal from the order is dismissed.

On April 3, 1966, in the early evening hours (approximately 8 p.m.), as she was walking to the home of relatives, Rachel Martinez, age 13, saw defendant and a person known to her as Creeper (Ernest Estrada); they walked up to her and Creeper took hold of her, she yelled, and he told her to shut up and carried her from the sidewalk to the Dominguez' house; he covered her mouth with his hand so she couldn't yell any more; defendant went into the house with Creeper. In the house were also Chi Dominguez and Hugo (David)

Mendez. He carried her into the bedroom where Creeper forced her to have an act of intercourse. Then defendant committed the acts charged in the last two counts of the information, followed by Chi Dominguez. ''They were drunk or something'' and about 2 o'clock they fell asleep and she was able to leave; she went home where she told her mother what had occurred; in the morning her father took her to the police station.

For the defense David Mendez testified that on April 3, 1966, around 10 o'clock he saw Rachel get out of a car full of young men; she told him not to say anything to her father. Henry Ramirez testified that he and defendant were in a bar around 6 p.m. on April 3, 1966, and defendant spent the night at his house where he went to bed on the couch at 9 p.m.; he went to work the next morning and saw defendant sleeping on the couch. Defendant testified that on April 3, 1966, he was with his aunt in Norwalk until 6 p.m., then went to the home of Ramirez; they went to a bar where they played pool and drank; at 9 p.m. they returned to Ramirez' house where he spent the night; he did not see Rachel on April 3, 1966, and did not commit any of the acts charged.

Citing as ''compelling reasons'' for a psychiatric examination of Rachel with respect to her veracity—her prior history as a juvenile sex offender, her ''mental retardation,'' her inability to tell time and the name of the street on which she lived, and the asserted inconsistencies and contradictions in her testimony—appellant claims that the trial court erred in not requiring her to submit to such. an examination. He concedes that *Ballard* v. *Superior Court,* 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838], is not here in point because ''no one moved for such an examination'' but that the judge should have ordered an examination on his own motion in view of ''the obvious 'simple-mindedness' of the prosecutrix.''

There is nothing in *Ballard* v. *Superior Court,* 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838], that makes a psychiatric examination of a complaining witness in cases of this kind an absolute requirement even where there is little or no corroboration. Said the court at pages 176-177 : ''Rather than formulate a fixed rule in this matter we believe that discretion should repose in the trial judge to order a psychiatric examination of the complaining witness in a case involving a sex violation if the defendant presents a compelling reason for such an examination. . . .

"We therefore believe that the trial judge should be authorized to order the prosecutrix to submit to a psychiatric examination if the circumstances indicate a necessity for an examination. Such necessity would generally arise only if little or no corroboration supported the charge and if the defense raised the issue of the effect of the complaining witness' mental or emotional condition upon her veracity. Thus, in rejecting the polar extremes of an absolute prohibition and an absolute requirement that the prosecutrix submit to a psychiatric examination, we have accepted a middle ground, placing the matter in the discretion of the trial judge."

Defendant, who knew Rachel, watched and listened to her testify and cross-examined her at length, yet he raised no issue "of the effect of the complaining witness' mental or emotional condition upon her veracity" in the trial court. Thus, in the absence of any absolute requirement that the trial judge order a psychiatric examination for a prosecutrix in a sex case where her testimony is largely uncorroborated, he committed no error in failing on his own motion to order such an examination. Actually, there appears to have been no good reason for the defendant to raise such an issue or for the trial judge to consider the matter. While Rachel "is not probably in the honor department in school," we are not impressed that this or her delinquency affected her veracity; nor was the trial judge who expressed his opinion that either she, "who is somewhat retarded," has been able at her age to "concoct and fabricate a detailed story with considerable detail and considerable degree of coherence" or it happened, and "assuming she is to some degree delinquent . . . that fact in itself is not determinative of the case."

 Arguing that it was around 8 p.m. when Rachel was carried into the house and 2 a.m. when she left and that the 6-hour period "accords neither with man's experience nor with nature," appellant claims that her testimony should be rejected as inherently improbable. This assertion does not place Rachel's testimony concerning defendant's acts in the category of inherently improbable evidence. The record does not show nor did Rachel claim that the acts committed upon her by defendant lasted for six hours; but the evidence did establish that at least three males, including defendant, attacked her, that "[t]hey were drunk or something" and she was unable to get away until around 2 a.m. when "they fell asleep." Under the circumstances, the fact that she did not leave the premises until 2 a.m. makes her testimony neither

suspect nor inherently improbable. "To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.]" (*People* v. *Huston*, 21 Cal.2d 690, 693 [134 P.2d 758]; *People* v. *Burton*, 55 Cal.2d 328, 352 [11 Cal.Rptr. 65, 359 P.2d 433].)

▉ Questions as to the weight to be given the evidence, the credibility of witnesses and the resolution of conflicts and inconsistencies are matters for the determination of the trier of fact and not for this court. (*People* v. *Huston*, 21 Cal.2d 690, 693 [134 P.2d 758]; *People* v. *Westek*, 31 Cal.2d 469, 472 [190 P.2d 9].) That the trial judge was well aware of the nature of Rachel's testimony and his duty of determining her credibility is reflected in his statement when, at the conclusion of the trial, he found defendant guilty.

▉ Appellant's argument that he was deprived of adequate assistance of counsel because he was deprived of a "crucial defense" (*People* v. *Ibarra*, 60 Cal.2d 460, 464 [34 Cal. Rptr. 863, 386 P.2d 487]) for the failure of his attorney to subpoena medical records of an examination given Rachel on the day after the acts were committed, is without merit. Absent in the record is any showing either that defendant was deprived of a defense or that counsel's alleged "lack of diligence or competence reduced the trial to a 'farce or a sham.' " (*People* v. *Ibarra*, 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]; *People* v. *Wein*, 50 Cal.2d 383, 410 [326 P.2d 457].)

First, it is well settled that where an act is committed without the consent of the prosecutrix, under section 288a, Penal Code, it is not necessary that her testimony be corroborated. (*People* v. *Battilana*, 52 Cal.App.2d 685, 695 [126 P.2d 923]; *People* v. *Willis*, 129 Cal.App.2d 330, 334 [276 P.2d 853].) Second, to prove a violation of section 288, Penal Code, it is not necessary to prove penetration. (*People* v. *Bennett*, 119 Cal.App.2d 224, 227 [259 P.2d 476].) In *People* v. *Pilgrim*, 215 Cal.App.2d 374, 379 [30 Cal.Rptr. 170], defendant, charged with violating section 288, Penal Code, argued that his counsel wrongfully failed to call as a witness a doctor who had examined the little girl two days after the act was committed. Said the court at page 379: "However, the defendant was not charged with rape, where proof of penetration is essential; section 288 of the Penal Code does not require proof of penetration or emission. *People* v. *Coontz*, 119 Cal.App.2d

276, 279 [259 P.2d 694], points out that: '. . . the only requirement is a touching with lustful intent.' Nor is corroboration of a child's testimony a necessary element of proof in a prosecution for violation of section 288 of the Penal Code. (*People* v. *Cox*, 104 Cal.App.2d 218 [231 P.2d 91]; *People* v. *Terry*, 99 Cal.App.2d 579 [222 P.2d 95].)

". . . It is obvious that if the doctor had been called and had testified that there had been no completed intercourse, this would not have been ground for finding the defendant not guilty."

Thus, even had the medical records been produced, we fail to see in what manner they could have aided defendant or provided a defense. A deputy public defender represented defendant; he was active in the trial of the cause, thoroughly cross-examined the only prosecution witnesses, Rachel and her mother, and presented three witnesses, including defendant, in an alibi defense. ▆ Counsel's decision concerning proper and effective trial tactics or the method and manner of presenting a defense, is imputed to and binding upon his client unless he raises objections to the acts or omissions of his counsel at the time of trial. Here no protest was made by defendant and any objections were thereby waived. (*People* v *Pilgrim*, 215 Cal.App.2d 374, 379-380 [30 Cal.Rptr. 170].)

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 1, 1967.