[Crim. No. 6488. First Dist., Div. Two. Nov. 27, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES
THOMAS, Defendant and Appellant.

Franklin Harris, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Jerome C. Utz, Deputy Attorneys General, for Plaintiff and Respondent.

AGEE, J.—Defendant appeals following jury conviction of pimping (Pen. Code, § 266h), statutory rape (Pen. Code, § 261, subd. 1), and furnishing marijuana to a minor (Health & Saf. Code, § 11532).

### Testimony of Prosecutrix

On September 23, 1966 Shirley, the prosecutrix, was living in Los Angeles with her family and was a junior at Manual Arts High School. On the evening of that day she went to a bar named the "Clown Club" and then went car riding with some friends. These friends were prostitutes, named Rita and Tangle. The three stayed at a motel that night.

At that time Shirley was a ward of the juvenile court in Los Angeles. She was then 16½ years of age.

During the first week with Rita and Tangle in Los Angeles, Shirley made enough money as a prostitute to allow her to accompany them and "Jake," their pimp, to San Francisco by plane. Upon arrival there, the three girls resumed the practice of prostitution. However, Rita and Tangle had "worked" in San Franciscco before and also had their own pimp. Shirley explained her need for a pimp, testifying that "it's different in San Francisco [than in Los Angeles] . . . you need a man in order to work on the streets."

Two days after her arrival in San Francisco, Shirley was introduced to appellant by a prostitute whom she had previously met. As the result of the conversation which ensued,

Shirley moved into appellant's apartment which was located at 111 Mason Street, San Francisco.

Shirley testified that she and appellant had sexual intercourse: ''Q. How many times altogether did you have intercourse with the defendant? A. I wouldn't say over ten.''

On their first day together, appellant supplied Shirley with a marijuana cigarette which she smoked in his presence. Shirley had smoked marijuana before. Appellant supplied her with marijuana cigarettes on a number of occasions thereafter.

With reference to the pimping charge, Shirley testified: ''Q. . . . during the time that you were with the defendant, approximately three weeks altogether, do you know approximately how much money, or can you estimate approximately how much money, that you had given the defendant as earnings from your prostitution? A. I would say probably a thousand, all together. Q. How much did you earn averagely a day when you worked as you indicated about three days a week? A. Uh-huh, I never made under $60, you know, a day.''

Reference to additional testimony given by Shirley will be made as the various points raised by appellant on appeal are discussed.

### Arrest of Appellant and Finding of Marijuana

Officer Nelson of the San Francisco Police Department testified that on December 16, 1966, about 9:30 a.m., he went to the premises at 111 Mason Street in response to a report from the manager, Mrs. King, that there were narcotics hidden under a flower pot on the roof.

While he was in the lobby with Mrs. King and her husband, a woman known as a prostitute entered. In response to Mrs. King's questions, she stated that she was going to room 404. King told Nelson that this was the room in which a young female Negro had been staying and that she might be a runaway.

Nelson thereupon went up to room 404 and knocked on the door. He was invited to come in and, upon entering, found Marie Sincata, a white prostitute, and Shirley. Nelson asked Shirley to step out into the hall. In response to his questioning, she stated that she was 16 years of age and a runaway from Los Angeles.

Shirley then fully related her relationship with appellant to Officer Nelson. She also told him that appellant kept his cache of marijuana, from which he had been supplying her, outside

of his room (then number 612) under the stairway carpet in the outside hallway. She described the specific spot as being at the third step on the stairway outside of room 612.

Nelson took Shirley to the Hall of Justice and then returned to 111 Mason Street. ▆ He found appellant in room 612 and placed him under arrest for pimping and statutory rape.

. Penal Code section 836, subdivision 3, provides that a peace officer may, without a warrant, arrest a person when ''he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed.''

With the information obtained from Mr. and Mrs. King, Marie Sincata and Shirley, we think that Officer Nelson had reasonable cause to make said arrest.

As to the search, Nelson went to the location indicated by Shirley and found a tinfoil container, the contents of which were zig-zag cigarette papers and vegetable- material later proven by expert testimony to contain marijuana.

There can be no question as to the legality of this search. It was made in a common hallway and the manager had given Officer Nelson permission to search the premises for narcotics.

The failure of appellant's trial counsel to object to the admission in evidence of the marijuana found in the hallway and the arrest of appellant is understandable. Such an objection would not have been valid.

Appellant's contention that the failure to object to the arrest or to the search showed incompetency on the part of his trial counsel is without merit. The waiver of these objections did not prejudice appellant.

### Trial Court's Refusal to Order Psychiatric Examination of Shirley

▆ After the close of the evidence but before final arguments to the jury, appellant's counsel moved that Shirley be ordered to submit to a psychiatric examination in order to test her veracity, citing *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416], in support of the motion. The motion was denied.

In *Ballard*, the court also denied a similar motion, stating: ''Rather than formulate a fixed rule in this matter we believe that discretion should repose in the trial judge to order a psychiatric examination of the complaining witness in a case involving a sex violation if the defendant presents a compel-

ling reason for such an examination.'' (64 Cal.2d, at p. 176; see also, *People* v. *Morales* (1967) 254 Cal.App.2d 194, 196-197 [61 Cal.Rptr. 764].)

In the instant case, the trial court said, in denying the motion: ''My observation of this Shirley . . . , she's a very brilliant, clear-thinking, bad girl. There is no question in my mind that there is any mental derangement as far as what she is saying here. . . . I can't imagine what any examination would produce.''

We find no abuse of discretion by the trial court in denying the motion for a psychiatric examination of the prosecutrix.

### Corroboration of Shirley's Testimony

■ Shirley is not an accomplice of appellant within the purview of Penal Code section 1111[1] as to any of the charges against appellant. (*Pimping*: *People* v. *Frey* (1964) 228 Cal. App.2d 33, 52 [39 Cal.Rptr. 49]; *People* v. *Berger* (1960) 185 Cal.App.2d 16, 19-20 [7 Cal.Rptr. 827]; *statutory rape*: *People* v. *Pettis* (1950) 95 Cal.App.2d 790, 793 [213 P.2d 731]; *People* v. *Hamilton* (1948) 88 Cal.App.2d 398, 401 [198 P.2d 907]; *furnishing marijuana to a minor*: *People* v. *Poindexter* (1958) 51 Cal.2d 142, 149-150 [330 P.2d 763]; *People* v. *De Paula* (1954) 43 Cal.2d 643, 647 [276 P.2d 600]; *People* v. *Brown* (1960) 184 Cal.App.2d 588, 597 [7 Cal.Rptr. 717]; *People* v. *Flynn* (1958) 166 Cal.App.2d 501, 513-514 [333 P.2d 37].)

Although there is ample corroborating evidence, the testimony of Shirley alone is sufficient to support each of the convictions.

### Prosecutor's Leading Questions

■ Shirley's testimony covers 112 pages of the reporter's transcript. Appellant calls our attention to *two* instances where the prosecutor asked leading questions of her which are alleged to be highly prejudicial to appellant.

The first question is, ''Did he [appellant] tell you how, if there was anything you were supposed to do?'' Upon objection that the question was leading, it was reframed, as fol-

---

[1]This section provides: ''A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.''

lows: "Q. Had you any conversation in connection with what you were to do?" No objection was made to this question.

As to the other instance, no objection was made to the following questions and answers: "Q. Okay. Well, now, did Mr. Thomas tell you what to do if you brought somebody to the apartment? A. Yes, to get him in there and get him to come as quick as possible and get him out so you can pull another trick. Q. I see. How would you get into the apartment? A. Well, I would ring the buzzer four times so he would know. I was coming up with a trick. Q. So who would know? A. Sonny. Q. Did you discuss that with him? A. Of course."

We have read the entire record and do not find that appellant sustained any prejudice as the result of any alleged leading questions asked by the prosecutor.

### Testimony of Parole Agent

Walter China was called by the prosecution. He testified that he was a parole agent for the State of California; that on October 17, 1966, about 8:30 p.m., he visited appellant at his room on the fourth floor of the hotel located at 111 Mason Street; that appellant opened the door in response to his knock; that the "young lady" (Shirley) was also in the room, wearing a white suit; that they talked for a while about various things; that appellant stated that Shirley was his girl friend and asked if it was alright for her to come up to see him sometimes; that he, China, said it was alright but that anything permanent would not be allowed.

Appellant's complaint is that the statement of China as to his occupation indicated to the jury that he, appellant, had a prior felony conviction. This is probably so.

However, Shirley had testified that she had on many occasions performed acts of prostitution in appellant's room as well as having had sexual intercourse there with him. The testimony of China was germane to the issues raised by appellant's plea of not guilty to the charges herein. If China did not state his occupation and the reason for his visit, the jury might well have thought that he was on the premises for some improper purpose. The prosecution was not required to jeopardize his credibility by not bringing out the testimony complained of by appellant.

In our opinion it is not reasonably probable that any result more favorable to appellant would have been reached in the absence of the alleged error. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

### Instruction re Presumption That Witness Is Presumed To Speak the Truth

 The court instructed the jury as follows: *"All witnesses are presumed to speak the truth,* but this presumption may be repelled by the manner in which a witness testifies, by the character of the witness testifying, by the character of the testimony offered by any witness, by the motives that may actuate a witness in coming here to testify, or by contradictory evidence. And any witness found by you to be wilfully false in a material part of his or her testimony is to be distrusted by you in other parts.'' (Italics added.)

The italicized portion in the above instruction is based on the first sentence of former Code of Civil Procedure section 1847, which was repealed as of January 1, 1967. (Stats. 1965, ch. 299, § 44, p. 1360.) The presumption that a witness speaks the truth has thus been eliminated from our statutory law. The instruction given therefore contained an erroneous statement of the law.

Viewing the instruction as a whole, however, we do not believe that any prejudice resulted to appellant from its being given or that it is reasonably probable that a result more favorable to appellant would have been reached in the absence of the alleged error. (*People* v. *Watson, supra,* 46 Cal.2d 818, 836.)

### Reasonable Belief As To Age Of Prosecutrix

 This point has to do only with the statutory rape conviction. The jury recommended in their verdict that the punishment for this conviction should be by imprisonment in the county jail. (Pen. Code, § 264.) The court sentenced appellant to one year on this charge, such sentence to run concurrently with the state prison sentences imposed on the pimping and marijuana convictions.

The foregoing sentences were imposed on April 24, 1967, and it is evident that the county jail sentence has long since expired. However, we nevertheless feel required to consider the validity of the statutory rape conviction. (See *In re Byrnes* (1945) 26 Cal.2d 824, 828 [161 P.2d 376].)

Appellant requested but the trial court refused to give CALJIC 507 (1967 Revision), which provides as follows: ''It is a defense to a charge of statutory rape that the defendant reasonably and in good faith believed that the prosecutrix was of the age of eighteen years or older even though, in fact, she was under the age of eighteen years. If from all the evidence

you have a reasonable doubt whether defendant reasonably and in good faith believed that she was eighteen years of age or older, you must give the defendant the benefit of that doubt and find him not guilty.''

This instruction is based upon the holding in *People* v. *Hernandez* (1964) 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092], wherein the Supreme Court, in a unanimous opinion, stated: ''The sole contention raised on appeal is that the trial court erred in refusing to permit defendant to present evidence going to his guilt for the purpose of showing that he had in good faith a reasonable belief that the prosecutrix was 18 years or more of age.'' (P. 530.)

The court did not attempt to weigh the offered proof or make any determination as to whether it established a defense if believed. The conclusion reached by the court is as follows:

''Some question has been raised that the offer of proof of defendant's reasonable belief in the age of the prosecutrix was insufficient to justify the pleading of such belief as a defense to the act. It is not our purpose here to make a determination that the defendant entertained a reasonable belief. Suffice to state that the offer demonstrated a sufficient basis upon which, when fully developed, the trier of fact *might* have found in defendant's favor. We conclude that it was reversible error to reject the offer.'' (P. 536; italics added.)

In the instant case, unlike *Hernandez,* the trial court did not refuse to admit evidence bearing upon the defense under discussion. Its error was in refusing to give an instruction on such defense even though requested to do so and the evidence was sufficient to require that the jury be so instructed.

The *Hernandez* defense was raised early in the trial. The following occurred during the cross-examination of Shirley's father, the first lay witness called by the prosecution: ''Q. She is a rather large girl for her age, is she not? A. Yes. Q. She looks like a grown woman, does she not? A. She might to you, but she doesn't to me. Q. I see. To people generally would she look like a grown woman? A. I can only say for myself. Mr. Norman [prosecutor]: Objection. That is calling for an opinion. The Court: I think the jury can see her. They can judge for themselves.''

It is apparent from the above that (1) appellant's counsel intended to urge that Shirley looked like ''a grown woman,'' (2) that the prosecutor only objected to the *form* of the question, not to its *materiality,* and (3) that the trial judge recognized that Shirley's appearance was in itself evidence and

that the jury would be the judge as to whether Shirley appeared to be a "grown woman."

This type of "observation evidence" is recognized in *People* v. *Dolly* (1966) 239 Cal.App.2d 143, 146 [48 Cal.Rptr. 478], wherein it is stated: "We cannot say that the trial court's finding here, based in part upon observations [of the prosecutrix] made in the courtroom, is unsupported." (See also: *People* v. *Battles* (1966) 240 Cal.App.2d 122 [49 Cal. Rptr. 367], wherein *appearance* of prosecutrix was held to "overcome the testimony of appellant that he honestly believed her to be of lawful age.")

Shirley's description of appellant's reaction when he learned that she was under 18 years of age is as follows: "Q. Did you ever at any time . . . tell the defendant that you were a runaway from Los Angeles. A. Yes. Q. About when was that in the sequence of these events, time-wise? A. I would say about a week and a half after I was with him. Q. Do you remember how that conversation came up? A. No, we were just, I was watching TV, and I said, 'Sonny.' And he said, 'What?' I said, I said, 'I'm not 21.' And he said, 'Oh.' I said, 'I'm 16, and I ran away from Los Angeles.' Q. Did he say anything to you? A. He kind of, 'oh.' He didn't say anything, he just, you know how you might groan when you have been hit by something?" (However, Shirley testified that there were subsequent acts of sexual intercourse with appellant.)

Parole Agent Walter China testified as follows: "Q. At the time that you saw Miss . . . , about what age did she appear to you to be? A. She [Shirley] seemed to be at that time at least 21."

Appellant was not required to take the witness stand in order to avail himself of the *Hernandez* defense.

In *People* v. *Dolly, supra,* 239 Cal.App.2d 143, the defendant was charged and convicted of a violation of Penal Code section 261, subdivision 2 (mental incapacity to consent). The defendant did not take the stand. Yet the appellate court carefully considered the evidence, pro and con, and concluded: "The trial court could reasonably have concluded from the evidence that the retarded mentality of the prosecutrix was obvious enough that it must have been known to an acquaintance such as the defendant."

Appellant's plea of not guilty put in issue every material element of the charge made against him. (Pen. Code, § 1019.) In *People* v. *Winters* (1966) 242 Cal.App.2d 711, 716 [51

Cal.Rptr. 735], the court said, after commenting upon the change in the law made by *People* v. *Hernandez, supra*: ''The *Hernandez* case, however, requires the People, in a statutory rape case, if the defense of lack of criminal intent is raised, to prove that the defendant did not have reasonable cause to believe that the victim was over 18 years of age. The logic of this holding requires the jury to pass on two questions: (1) did the accused honestly believe that the complaining witness was 18 years of age or over? and (2) if so, was that the belief of a reasonable man? If the jury finds that the defendant did not really believe that the consenting girl was over the statutory age of consent, or that if he believed that she was over 18 he was not acting as a reasonable person in the circumstances, it may convict him.''

The duty of the trial court in instructing the jury is emphatically stated in the leading case of *People* v. *Carmen* (1951) 36 Cal.2d 768, 773 [228 P.2d 281]: ''It is *elementary* that the court should instruct the jury upon every material question upon which there *is any evidence deserving of any consideration whatever.* [Citations.] *The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon.* (Citations.] *That is a question within the exclusive province of the jury. However incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true.* [Citations.]'' (See also: *People* v. *Wilson* (1967) 66 Cal.2d 749, 762 [59 Cal.Rptr. 156, 427 P.2d 820].)

In *People* v. *Moseley* (1966) 240 Cal.App.2d 859 [50 Cal.Rptr. 67], defendant Moseley was found guilty by a jury of pimping, pandering and statutory rape. The prosecution's case rested on the testimony of 16-year-old Diane. ''Moseley argues that the trial court committed reversible error in failing to instruct the jury that if he reasonably believed the prosecutrix to be over the age of 18 years, he would not be guilty of statutory rape. . . . Since a result more favorable to Moseley was *possible* had the instruction under discussion been given, the judgment on count V (statutory rape) must be reversed.'' (Italics added.) The pimping and pandering convictions were affirmed.

The facts in *Moseley, supra,* as set forth in the opinion, are remarkably similar to those in the instant case. It is true that Moseley took the stand and ''denied knowing that she [prosecutrix] was 16 when he met her. . . .'' (p. 862). However, we do not think that the *Hernandez* defense is available only to those defendants who take the stand. To impose such a

requirement would be violative of the Fifth Amendment of the United States Constitution.

The record herein shows that appellant had suffered three prior felony convictions. There was independent evidence from which it could be reasonably inferred that he believed that the prosecutrix was over the age of 18 years. His counsel had good reason to keep evidence of defendant's criminal record from the jury by not exposing appellant to impeachment by putting him on the stand. However, by exercising his right not to be compelled to be a witness against himself, appellant should not for that reason be deprived of a recognized lawful defense to the charge made against him.

The judgment is affirmed as to count 1 (pimping) and count 3 (furnishing marijuana to a minor) ; it is reversed as to count 2 (statutory rape).

Taylor, J., concurred.

SHOEMAKER, P. J.—I dissent from that part of the judgment reversing the conviction as to statutory rape.

The opinion refers to CALJIC No. 507, and holds that, on this record, it was error for the trial court to refuse the request of defendant that it be given. In doing so, the court relies upon *People* v. *Hernandez, supra* (61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092]). I do not believe that *Hernandez* requires, under the facts here present, that this instruction be given. We must remember that in *Hernandez,* the defendant made an offer to prove his reasonable and good faith belief as to the age of the victim and that the court observed ''the offer demonstrated a sufficient basis upon which, when fully developed, the trier of fact might have found in defendant's favor.'' (P. 536.)

An examination of the record in *Hernandez* discloses that the belief, relied upon by *Hernandez* and the subject of his offer of proof, was allegedly based upon a statement made by the victim to a police officer, who stopped her and defendant on a curfew check and *Hernandez* overheard her tell the officer that she was over 18 (a defense that could only be raised by defendant taking the stand).

The victim herein testified that after defendant and she had lived together for several days, during which acts of sexual intercourse had taken place between them, she told defendant she was not 21 years of age. that she was 16 years old and that she had run away from Los Angeles; that defendant had

sexual relations with her following her telling him that she was only 16 and that defendant never told her to leave but did say to her, after knowing her age and continuing his sexual relations with her, ''Whew, every time I go to sleep I think about if I get in trouble behind you.'' (This quotation from the victim's testimony was adduced on cross-examination and is not set forth in the quotation in the opinion which was taken from her direct examination.)

The victim's account of her relations with defendant Thomas stood up under cross-examination and while it presents a sordid picture, has a ring of truth.

The defendant did not take the stand to refute the testimony of the victim. He was the only person who could do so. He chooses to rely on the testimony of his probation officer on cross-examination that he met the victim once in defendant's room and that to him she appeared to be at least 21 years of age (what else can be expected of a probation officer who accepted defendant's statement that the victim was his girl-friend—a good girl—who as we know at the time was engaging in various sexual acts and defendant was her pimp); and the observation that the trier of fact could make at the time of trial as to the victim's age.

In my opinion, such a showing, if such it may be called, is not sufficient. The defense we are dealing with is an affirmative defense as to which the defendant has the burden of proof (see comment to CALJIC No. 507, 1967 Cumulative Pocket Part).

The inquiry is as to the state of mind of the defendant, which can only be established by the expression of the party whose good faith is in issue—in this case, the defendant.

It is not an unusual requirement. As is pointed out in Witkin, California Evidence (2d ed. 1966) at page 188, in many situations, for reasons of policy or convenience, the burden of proof is placed on the defendant: double jeopardy; entrapment; defendant under eighteen and not subject to death penalty; *good faith marriage in bigamy prosecution*; valid doctor's prescription in prosecution for narcotics possession or sale.

In addition to the foregoing, there are many statutes which impose the burden of producing evidence on certain defenses (Witkin, *supra,* at page 187).

Insofar as the *Hernandez* case is relied upon as placing the burden of proof on the People to prove that defendant did not have reasonable cause to believe that the victim was over 18

years of age, my colleagues have failed to appreciate that the court is talking of the overall burden on the People to establish the guilt of defendant and not the requirement as contended by the writer that the burden of proof is upon the defendant to establish the defense of good faith and reasonable belief with evidence of probative value, as opposed to evidence that is purely conjectural as to defendant's state of mind.

In *People v Moseley, supra* (240 Cal.App.2d 859 [50 Cal. Rptr. 67]), the defendant took the stand and denied everything that the pleadings and testimony charged him with doing.

In *People v. Winters, supra* (242 Cal.App.2d 711 [51 Cal. Rptr. 735]), the defendant took the stand and testified as to his good faith and reasonable belief that the victim was over 18 years of age.

Hence in each case a conflict in the testimony was created and the duty fell on the trier of fact to determine the conflict.

There should be added to the references made in the majority opinion to the case of *People v. Dolly, supra* (239 Cal.App.2d 143 [48 Cal.Rptr. 478]), the following: "Finally, defendant argues that the prosecution had the burden of proving that he had knowledge of the victim's lack of capacity to give consent, and that it failed to carry this burden. Defendant relies on *People v. Hernandez*, 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092], which holds that a statutory rape charge is defensible, upon defendant's showing of his lack of criminal intent because of his honest and reasonable belief that the prosecutrix was old enough to consent. Presumably, the same rule applies to a case involving lack of mental capacity. *Here, however, defendant elected not to testify and presented no defense.* Furthermore, there was evidence to support a finding that defendant was aware of the lack of mental capacity of the prosecutrix. It is inferable from this record, including the letter from defendant to the prosecutrix above quoted, that defendant had been acquainted with the prosecutrix for some time prior to the alleged offense, and thus had had an opportunity to know about her condition." (P. 146; italics supplied.) This quotation speaks for itself.

The majority opinion cites no case and it is apparent none can be found to support the statement that "To impose such a requirement would be violative of the Fifth Amendment of the United States Constitution." The "requirement" re-

ferred to is that the *Hernandez* defense be raised by the defendant taking the stand. As has been noted, there are many cases in which the defendant must take the stand if his defense is to be established and it has never been held to violate any of his constitutional rights.

If the showing made in this case justifies the giving of the instruction requested, then the administration of justice is but an exercise of futility.

I would affirm the judgment convicting defendant of statutory rape.

Appellant's petition for a hearing by the Supreme Court was denied February 19, 1969.