Filed 7/28/23  P. v. Rhine CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JASON ANTHONY RHINE,<br><br>  Defendant and Appellant. | D080806<br><br><br>(Super. Ct. No. BAF2100096) |

APPEAL from a judgment of the Superior Court of Riverside County, Rene Navarro, Judge.  (Retired Judge of the Santa Clara Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Jason Anthony Rhine, in pro. per.; and Laura P. Gordon, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

Jason Anthony Rhine appeals the judgment sentencing him to prison for the first degree murder of Daniel Figueroa and for other crimes.  After his appointed counsel filed a brief raising no claims of error pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), Rhine filed a supplemental brief listing

eight issues he wanted us to review. We have reviewed the record, considered the issues Rhine listed, and conclude none has merit. We therefore affirm the judgment.

## I.

## BACKGROUND

We here set out a brief summary of the facts needed for a general understanding of the case. Additional facts relevant to the issues raised by Rhine will be added as needed to the discussion of those issues.

A. *Shooting and Antecedent Events*

Rhine is the brother of Sonia Estrada. Estrada began dating Figueroa in 2013 when they lived in Banning and continued to do so until September 2020, when he moved out of California "to try to better himself." In November 2020, Figueroa telephoned Estrada and told her he was going to take a bus back to California. Estrada picked Figueroa up in West Covina and drove him back to Banning, where he stayed with Estrada and other members of her family at their house for about 10 days, and then, over Estrada's objection, moved to his sister's house. Estrada then stopped all contact with Figueroa.

On the night of January 11, 2021, Figueroa surprised Estrada and her brother-in-law, Jonathan Martinez, as they were returning home. Figueroa grabbed Estrada's arm and demanded to speak to her, and she agreed. Martinez left Estrada outside and entered the house, where he saw Rhine sleeping on a couch. Estrada and Figueroa remained outside and talked for about 15 minutes, when Estrada put her handbag down so that she could don a sweater. Estrada's wallet and cell phone were in the handbag. Figueroa snatched the handbag and fled.

Estrada went inside the house, awakened Rhine, and told him Figueroa had taken her handbag. Estrada and Martinez drove to Figueroa's sister's house, and Rhine drove there separately. When Rhine knocked on the door and asked for Figueroa, Salena Holmes, who also lived at Figueroa's sister's house, answered and said he was not there. Rhine instructed Holmes to tell Figueroa that if he did not return Estrada's handbag, Rhine was "going to put a hole in him."

Estrada and Martinez then drove around looking for Figueroa. During the drive, she called her own cell phone. Figueroa answered and told Estrada to go to a certain location by herself if she wanted her handbag back. When Estrada arrived at the location with Martinez, Figueroa saw Martinez in the vehicle, smashed Estrada's cell phone, and ran off with her handbag. Figueroa later sent Estrada a Facebook message that he would leave the handbag in her father's truck. Holmes sent Rhine a Facebook message that Figueroa had put Estrada's handbag in the truck. When Estrada retrieved the handbag on the morning of January 12, 2021, $200 and a vape pen were missing.

Between 8:01 and 8:04 a.m. on January 12, 2021, Rhine exchanged messages on Instagram with another user. Rhine's account profile contains the word "diablo," the Spanish word for "devil" (Webster's 3d New Internat. Dict. (2002) p. 621), which he uses as his rap name. Rhine told the other user that he had been "[h]unting some lame" all night long. Rhine also wrote that he was going to Figueroa's sister's house and "[b]eing the driver and the shooter sucks." According to Rhine, "Life is a bitch when you're the driver and the shooter," is a lyric from one of his rap songs.

About 10 minutes after the Instagram exchange, Rhine knocked on the door of Figueroa's sister's house. When Holmes answered the door, Rhine

told her to tell Figueroa to come outside to take a ride with him. Figueroa refused, went to his room, and closed the door. Rhine then entered the house, went to Figueroa's room, and asked, "Why are you going to make me do this to these people[?] You think it's okay for you to f**k with my family and I don't f**k with your[s?]" Rhine also asked Figueroa whether he broke Estrada's cell phone and whether he had any money. Figueroa responded, "Give me a couple of days to come up with [the] money, and I'll give it to you." Rhine responded, "By the time I come back, you better have that f**king money." Rhine exited the house, reentered with a gun, fired two shots at Figueroa, and then left. Figueroa died of a gunshot wound to the chest.

When police arrived, they found Figueroa's corpse lying face down on the kitchen floor. They found no weapons near the corpse but did find a machete in its sheath under the mattress in Figueroa's bedroom. Rhine later claimed he shot Figueroa because Figueroa jumped at him, he thought Figueroa was going to hit him with the machete, and he needed to defend himself.

B.     *Criminal Proceedings*

The People charged Rhine with murder (Pen. Code, § 187, subd. (a); undesignated section references are to this code), burglary (§ 459), and possession of a firearm by a felon (§ 29800, subd. (a)(1)). The People alleged Rhine personally and intentionally discharged a firearm causing death in committing the murder (§ 12022.53, subd. (d)) and personally used a firearm in committing the burglary (§ 12022.5, subd. (a)). The People also alleged Rhine had a prior conviction that qualified as a serious felony for purposes of a five-year enhancement (§ 667, subd. (a)(1)) and as a strike for purposes of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12).

4

The case proceeded to a jury trial. Evidence was presented over the course of several days in March and April 2022. The jury was instructed on first and second degree murder, voluntary manslaughter as a lesser included offense of murder, and self-defense, among other matters. The jury found Rhine guilty of first degree murder, first degree burglary, and possession of a firearm by a felon. It found the firearm enhancement allegations true, and, based on the parties' stipulation, found the prior conviction allegations true.

The trial court denied Rhine's motion to strike the prior conviction allegations and firearm enhancements. The court sentenced Rhine to prison on May 9, 2022, for an aggregate term of 80 years to life. The term consisted of 25 years to life for the murder conviction (§ 190, subd. (a)), doubled to 50 years to life based on the prior strike conviction (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)), plus a consecutive term of 25 years to life for the attached firearm enhancement (§ 12022.53, subd. (d)), plus a consecutive term of five years for the prior serious felony conviction (§ 667, subd. (a)(1)). The trial court imposed and stayed execution of determinate prison terms on the other convictions and firearm enhancement. (§ 654, subd. (a).) The court imposed a restitution fine of $300 (§ 1202.4, subd. (b)) and a parole revocation restitution fine in the same amount (§ 1202.45, subd. (a)).

II.

DISCUSSION

Rhine's appointed counsel filed a brief pursuant to *Wende, supra,* 25 Cal.3d 436, which summarized the facts and proceedings of the case, asserted no claims of error, and invited us to conduct an independent review of the record for prejudicial error. Counsel listed 17 issues "to assist the court in conducting its independent review of the record" (see *Anders v. California* (1967) 386 U.S. 738, 744), and in a supplemental brief Rhine selected eight of

those issues for us to review. We have already provided the "brief description of the facts and procedural history of the case, the crimes of which the defendant was convicted, and the punishment imposed" that is required in an opinion in a *Wende* appeal. (*People v. Kelly* (2006) 40 Cal.4th 106, 123-124.) We now proceed, as required by *Kelly*, to "describe[ ] the contentions personally raised by the defendant and the reasons those contentions fail." (*Id.* at p. 124.)

*First*, Rhine contends the multiple references to his moniker "Diablo" during trial may have caused the jury to be biased and prejudiced against him and thereby denied him a fair trial. In presenting testimony about Rhine's Instagram account records, the prosecutor asked an investigator whether Rhine's profile contained the word "Diablo," and then asked about messages sent by "Diablo." Rhine's counsel asked the investigator whether he knew one of the messages contained a "lyric from Diablo's rap music." Rhine testified on direct examination that he is "a rapper in the Banning community," uses "Diablo" as his "rap name," and the message that "[b]eing the driver and the shooter sucks" was a lyric from one of his rap songs. Such "brief, mild and factual" uses of Rhine's moniker to identify him as the sender of the Instagram messages "could not have been prejudicial." (*People v. Brown* (2003) 31 Cal.4th 518, 551.)

*Second*, Rhine contends the prosecutor improperly attempted to exploit rap lyrics spoken by him as evidence of guilt, in violation of his rights to freedom of speech and artistic expression. He cites recent legislation limiting the admissibility of "a form of creative expression," including rap lyrics, in criminal proceedings. (Evid. Code, § 352.2, enacted by Stats. 2022, ch. 973, § 2, eff. Jan. 1, 2023.) Rhine may not rely on that legislation to seek reversal of the judgment, however, because *the prosecutor* did not attempt to exploit

6

the rap lyrics to make Rhine look guilty. It was *Rhine's counsel* who introduced the issue of rap lyrics at trial, by asking the prosecutor's investigator whether he knew the Instagram message that "[b]eing the driver and the shooter sucks" was a lyric from one of Rhine's rap songs and later asking Rhine about the message. Because Rhine " 'is responsible for the introduction of [this] evidence, he cannot complain on appeal that its admission was error.' " (*People v. Ramos* (1997) 15 Cal.4th 1133, 1168; accord, *People v. Williams* (1988) 44 Cal.3d 883, 912 ["It is axiomatic that a party who himself offers inadmissible evidence is estopped to assert error in regard thereto."].)

*Third*, Rhine contends admission of a witness's testimony that she "work[ed] for the Banning Police Department, and [was] assigned to the Riverside County Gang Impact Team" was prejudicial error because he was not on trial for a gang-related crime. Rhine forfeited this contention by failing to object to the testimony at trial. (Evid. Code, § 353, subd. (a); *People v. Schultz* (2020) 10 Cal.5th 623, 679; *People v. Murphy* (2022) 80 Cal.App.5th 713, 732.) The contention also lacks merit. In cases not involving a gang-related crime or enhancement, reference to a defendant's gang involvement may be prejudicial and should not be allowed if its probative value is minimal. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.) The witness did not say Rhine was a gang member or the crimes at issue were gang related. No prejudice could have resulted from her "fleeting and minor" statement that she was assigned to a gang unit, which merely provided identifying background information and was never mentioned again. (*People v. Mendoza* (2000) 24 Cal.4th 130, 163; cf. *People v. Valdez* (2004) 32 Cal.4th 73, 123 [detective's "fleeting reference to 'jail' " as source of defendant's photograph in lineup "was not 'so outrageous or inherently prejudicial that

7

an admonition could not have cured it' "]; *People v. Franklin* (2016) 248 Cal.App.4th 938, 956 ["none of the three vague and fleeting references to appellant's criminal history resulted in incurable prejudice or irreparably damaged appellant's chance of obtaining a fair trial"].)

*Fourth*, Rhine contends the trial court prejudicially erred by excluding an autopsy toxicology report that Figueroa had methamphetamine in his system. According to Rhine, the report may have helped prove Figueroa's state of mind and behavior as pertinent to Rhine's assertion of self-defense. The prosecutor moved in limine to exclude the toxicology report as irrelevant. (Evid. Code, §§ 210, 350.) At the hearing on the motion, the court advised Rhine's counsel he would need an expert to testify how the methamphetamine made Figueroa aggressive or otherwise affected his behavior. Counsel responded: "I'm not anticipating having evidence as to how [Figueroa] was acting strange or under the influence of drugs in some manner that day, and so therefore I don't really have anywhere to go with it from my perspective." Having failed to pursue the matter after making no offer of proof as to what testimony an expert would have given about the effect of methamphetamine on Figueroa's behavior nor otherwise establishing the relevance of the toxicology report, Rhine has not shown error in its exclusion. (Evid. Code, § 354, subd. (a); *People v. Anderson* (2001) 25 Cal.4th 543, 580-581; *People v. Sperl* (1976) 54 Cal.App.3d 640, 657.)

*Fifth*, Rhine contends the prosecutor committed misconduct and deprived him of a fair trial by asking him during cross-examination whether he had been convicted of "a felony assault, *along with admitting a gang allegation*." (Italics added.) The trial court previously ruled Rhine's prior conviction could be used to impeach him (Evid. Code, § 788), but excluded any reference to the gang enhancement allegation as more prejudicial than

8

probative (*id.*, § 352). Rhine, however, neither objected to the prosecutor's question when it was asked nor requested an admonition to the jury to disregard the question and answer; and he does not contend an objection would have been futile and an admonition would have failed to cure any harm. He therefore forfeited this claim of prejudicial prosecutorial misconduct. (*People v. Fayed* (2020) 9 Cal.5th 147, 204; *People v. McDermott* (2002) 28 Cal.4th 946, 1001.) Were we to overlook the forfeiture, we would reject the claim on the merits. " ' "It is, of course, misconduct for a prosecutor to 'intentionally elicit inadmissible testimony' " ' " (*People v. Trinh* (2014) 59 Cal.4th 216, 248), but such misconduct is not always prejudicial (*id.* at p. 249). The prosecutor referenced the gang enhancement allegation attached to Rhine's prior assault conviction only briefly and then moved on to other topics. The reference therefore " 'constituted an isolated instance' " of misconduct that was harmless, not "an egregious pattern of conduct that rendered the trial fundamentally unfair in denial of [Rhine's] federal constitutional right to due process of law." (*People v. Smithey* (1999) 20 Cal.4th 936, 961.)

*Sixth*, Rhine contends his counsel was ineffective for failing to object to the prosecutor's improper question about the gang enhancement of the prior felony assault conviction. But, "deciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance [of counsel]." (*People v. Hillhouse* (2002) 27 Cal.4th 469, 502; accord, *People v. Williams* (2017) 7 Cal.App.5th 644, 686.) "[E]xcept in those rare instances where there is no conceivable tactical purpose for counsel's actions, claims of ineffective assistance of counsel should be raised on habeas corpus, not on direct appeal." (*People v. Lopez* (2008) 42 Cal.4th 960, 972.) This is not one of those rare instances. Rhine's counsel may well have decided not to object

9

because the prosecutor's reference to the gang enhancement allegation was fleeting, and an objection "would serve only to highlight the undesirable testimony." (*People v. Catlin* (2001) 26 Cal.4th 81, 165; accord, *People v. Bradford* (1997) 14 Cal.4th 1005, 1052.) "There being a plausible reason why counsel did not object, we cannot conclude on this record that counsel's inaction lacked a reasonable tactical basis." (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1313.)

*Seventh*, Rhine contends the trial court prejudicially erred by restricting the use of prior convictions to impeach Holmes. Rhine moved in limine to use seven convictions Holmes had suffered between August 2010 and February 2017. The convictions included three for unlawful possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)), two for reckless driving while attempting to evade a peace officer (Veh. Code, § 2800.2), one for false personation (§ 529), and one for escape from custody (§ 4532, subd. (b)(1)). The court ruled Rhine could impeach Holmes with the reckless driving and escape convictions, but not with the convictions for unlawful possession of a controlled substance (because those were not for a crime of moral turpitude) or for false personation (because it was remote in time). In so ruling, the court did not err. Since "simple possession of [a controlled substance] does not necessarily involve moral turpitude," a witness may not be impeached with a conviction for that crime. (*People v. Castro* (1985) 38 Cal.3d 301, 317.) And, given the court's ruling that Rhine could use three other convictions to impeach Holmes, the court did not abuse its discretion by prohibiting use of her 2010 false personation conviction as remote in time. (See *People v. Pitts* (1990) 223 Cal.App.3d 1547, 1554-1555 [court acted within its discretion in excluding evidence of witness's juvenile adjudication for murder committed 11 years earlier].)

10

*Eighth*, and finally, Rhine contends the trial court did not take sufficient action to verify that juror No. 12 was awake and alert throughout trial. The court noticed on two occasions during trial that the juror's eyes were closed and asked whether he was sleeping. The juror admitted his eyes were closed, but said he was not asleep, was paying attention, and heard the evidence presented. The court advised the juror to raise his hand if he felt tired and wanted a break, and the juror agreed to do so. During the conference on jury instructions, the prosecutor raised the issue of potential removal of juror No. 12. Rhine's counsel stated: "I have no concerns about Juror No. 12 . . . . I believe he was cognizant and aware of the proceedings and all the arguments being made and listening and making eye contact. So I had no objection." The court stated that after it had advised the juror to request a break if he felt tired, the court saw the juror's eyes were often closed but were "open almost entirely during the course of the closing arguments," and the juror's "almost immediate[ ]" response to the court's announcement of a recess indicated he was not sleeping. Having chosen not to object to juror No. 12's continued service, Rhine may not complain on appeal that the trial court did not do enough to make sure the juror was not sleeping through trial. (*People v. Williams* (2013) 58 Cal.4th 197, 289; *People v. Lewis* (2009) 46 Cal.4th 1255, 1308.) In any event, the complaint lacks merit. By questioning the juror about sleeping, advising him to request a break if he felt tired, and observing him during trial, the court took appropriate steps to make sure he was in fact awake and paying attention. (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1233-1234; *People v. Winters* (1966) 242 Cal.App.2d 711, 718.)

Having reviewed the record and considered the contentions Rhine raised in his supplemental brief, we conclude he had a fair trial, the evidence

supports the jury's verdicts and findings, and the trial court imposed the legally prescribed punishment.  We have found no error that requires reversal or modification of the judgment.

## III.

## DISPOSITION

The judgment is affirmed.


IRION, Acting P. J.

WE CONCUR:



DO, J.



CASTILLO, J.